# Exhibit 1

STATE OF NEW YORK
SUPREME COURT  : COUNTY OF ERIE

_____

ROBERT GALBRAITH and MELISSA MOSKO,
156 Riley Street
Buffalo, New York 14209

DANA McWHITE and KENNETH McWHITE,
208 W. Tupper Street
Buffalo, New York 14201

ANTWANETT WILLIAMS,
81 Florida Street

RAHWA GHIRMATZION,
98 Fairfield Avenue
Buffalo, New York 14212

REBECCA WHIPPLE and NOLAN WHIPPLE,
5565 Country Club Lane
Hamburg, New York 14075

SUSAN GILLICK,
67 Highland Avenue
Buffalo, New York 14202

FELICIA RICHARDSON and RICHARD
RICHARDSON,
247 Hazelwood Avenue
Buffalo, New York 14215

And ABDUKADIR ABDULLAHI,
251 Trenton Avenue, Apt. 1, Left
Buffalo, New York 14201

on behalf of themselves and their respective
minor children, and on behalf of a class of
all persons similarly situated,

Plaintiffs

vs.

**CLASS ACTION
SUMMONS**

**Index No:**

CITY OF BUFFALO,
65 Niagara Square
Buffalo, New York 14202

BUFFALO WATER BOARD,
Department of Public Works, Parks, and
Streets
502 City Hall
Buffalo, New York 14202

BUFFALO MUNICIPAL WATER
FINANCE AUTHORITY,
502 City Hall
Buffalo, New York 14202

BYRON W. BROWN, in his official capacity
As Mayor of Buffalo,
65 Niagara Square
Buffalo, New York 14202

OLUWOLE A. McFOY, in his official capacity
As Chairman of the Buffalo Water Board,
Department of Public Works, Parks, and
Streets
502 City Hall
Buffalo, New York 14202

VEOLIA WATER NORTH AMERICA-
NORTHEAST, LLC,
C T Corporation System
28 Liberty Street
New York, New York 10005

VEOLIA NORTH AMERICA, LLC
461 From Road
Suite 400
Paramus, New Jersey 07652

                          Defendants

_____

TO THE ABOVE NAMED DEFENDANTS:

**YOU ARE HEREBY SUMMONED** to answer the Class Action Complaint in this action and to serve a copy of your answer, or, if the Class Action Complaint is not served with this Summons, to serve a notice of appearance, on the Plaintiff(s) Attorneys within TWENTY (20) DAYS after the service of this Summons, exclusive of the day of service (or within THIRTY (30) DAYS after the service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Class Action Complaint.

DATED:        Buffalo, New York
              July 12, 2023

                        LIPSITZ  GREEN SCIME CAMBRIA LLP

                        By: s/Robert M. Corp
                              ROBERT M. CORP, ESQ..
                              JOSEPH J. MANNA, ESQ.
                        Attorneys for Plaintiff
                        42 Delaware Avenue, Suite 120
                        Buffalo, New York 14202-3924
                        (716) 849-1333
                        rcorp@lglaw.com

6087795v1 - 072141.0001

# Exhibit 2

STATE OF NEW YORK
SUPREME COURT  :  COUNTY OF ERIE

_____

ROBERT GALBRAITH and MELISSA MOSKO,
DANA McWHITE and KENNETH McWHITE,
ANTWANETT WILLIAMS,
RAHWA GHIRMATZION,
REBECCA WHIPPLE and NOLAN WHIPPLE,
SUSAN GILLICK,
FELICIA RICHARDSON and RICHARD RICHARDSON,
and ABDUKADIR ABDULLAHI,
on behalf of themselves and their respective
minor children, and on behalf of a class of
all persons similarly situated,

                Plaintiffs,

vs.

CITY OF BUFFALO,
BUFFALO WATER BOARD,
BUFFALO MUNICIPAL WATER
FINANCE AUTHORITY,
BYRON W. BROWN, in his official capacity
as Mayor of Buffalo,
OLUWOLE A. McFOY, in his official capacity
as Chairman of the Buffalo Water Board,
VEOLIA WATER NORTH AMERICA-
NORTHEAST, LLC, and
VEOLIA NORTH AMERICA, LLC,

                Defendants

_____

**CLASS-ACTION
COMPLAINT**

Index No:

Plaintiffs, ROBERT GALBRAITH and MELISSA MOSKO, DANA McWHITE

and KENNETH McWHITE, ANTWANETT WILLIAMS, RAHWA GHIRMATZION,

REBECCA WHIPPLE and NOLAN WHIPPLE, SUSAN GILLICK, FELICIA

RICHARDSON and RICHARD RICHARDSON, and ABDUKADIR ABDULLAHI, on

behalf of themselves and their respective minor children (collectively "Plaintiffs"),

and on behalf of a class of all persons similarly situated, by their attorneys,

6087361v1 - 072141.0001

LIPSITZ GREEN SCIME CAMBRIA, LLP, as and for their Class Action Complaint against Defendants, allege as follows:

## INTRODUCTION

1.      In this action, Plaintiffs complain, *inter alia*, that their constitutional rights, along with the rights of all Buffalo residents, to a healthy environment, guaranteed by Section 19 of Article I of the New York Constitution (the "Green Amendment"), have been and are being violated through Defendants depriving Buffalo's residents of therapeutic fluoridated drinking water.

2.      For over 60 years, people throughout the United States have come to expect that major cities like Buffalo provide community water fluoridation since it has become a standard in accord with recommendations from state, federal, and international agencies as a critical health measure for all people, especially for the young and the elderly.

3.      A material element of Plaintiffs' and Class Members' purchase of water from Defendants is their understanding that Buffalo's drinking water contains therapeutic and healthy amounts of fluoride.

4.      Defendants' actions to cease and not supply fluoridated water are made significantly more appalling, and more egregious, considering their failure to properly and adequately notify the consuming public that Buffalo's water does not contain therapeutic levels of fluoride in any material or sufficient way.

5.      Buffalo's residents and community leaders were completely unaware of Defendants' actions until recent bombshell media reports sparked fury in the community. Indeed, the resident who should be the most informed and "in-the-

know" in Buffalo, Defendant Mayor Byron Brown, on January 27, 2023, commented on his own lack of knowledge that his city was failing to provide fluoride to its residents: "Like others, I was not immediately notified, but I should have been, and we should have put the information out to the community. No excuse for it."

6.      Shockingly, as of this July 12, 2023 filing, the Defendants have not yet resumed fluoridation of Buffalo's water.  A story by Charlie Specht of The Buffalo News on January 17, 2023 first broke the news to members of the Buffalo community that the Defendants had ceased fluoridation of Buffalo's water in June 2015.  At that time, now nearly six months ago, Defendants (including Defendant Brown) and the Buffalo Common Council informed the public that they had been unaware that the fluoridation had ever stopped, and that they would take measures to see to it that fluoridation was resumed.

7.      However, now, nearly six months later, the Defendants have not resumed fluoridation of the water.  Nor have Defendants informed the people, with any modicum of specificity or certainty, when fluoridation will resume in Buffalo.  There have been contradictory statements from Defendants reported in local media as to the purported timeline for fluoridation, but the community is still without any firm answers as to when (or if) the Defendants will actually resume fluoridating Buffalo's water.

8.      A statewide and nationwide community health standard relating to community water fluoridation exists because access to fluoridated water significantly improves dental health.  By eliminating, and failing to resume, such

6087361v1 - 072141.0001

access, and doing so in a way which surreptitiously prevented Buffalo's residents and the consuming public from learning that they were not receiving fluoridated water, Defendants have caused serious harm to the people of Buffalo.

9.    Because years have transpired without fluoridated water provided to Buffalo's Residents, Defendants must be ordered to resume fluoridation of Buffalo's drinking water immediately.  Defendants also must be held responsible for the damage they have caused to Plaintiffs, their families, and hundreds of thousands of other Buffalonians.

10.    Among other things, the Court should certify this action as a class action; declare that Defendants have violated, and are violating, Plaintiffs' constitutional rights under the Green Amendment and New York State statutory and common law by depriving Buffalo residents of fluoridated drinking water; and should order the Defendants:

a) to immediately resume fluoridation of Buffalo's water supply;

b) to provide free dental clinics to all Buffalo residents (and all other Buffalo residents since June 2015) who have experienced cavities and other diseases and complications preventable through public water fluoridation; and

c) to pay damages for harms in an amount believed to exceed $160 Million dollars.

## PARTIES

11.      At all relevant times, Plaintiff Robert Galbraith was and still is a resident of the City of Buffalo, county of Erie, and the State of New York. Plaintiff Galbraith has lived in the City of Buffalo continuously since 2009.

12.      Plaintiff Melissa A. Mosko was and still is a resident of the City of Buffalo, county of Erie and the State of New York. Plaintiff Mosko has lived in the City of Buffalo continuously since 2012.

13.      Plaintiff Galbraith married Plaintiff Mosko in 2017. Plaintiffs Mosko and Galbraith own and live in a home on the East Side of the City of Buffalo. Plaintiffs Mosko and Galbraith are the parents of a five-year-old son, F.G. Plaintiffs Mosko and Galbraith bring suit individually and on behalf of their minor child, F.G.

14.      Plaintiffs Dana McWhite and Kenneth McWhite own and live in a home in Buffalo, NY with their five-year-old son and three-year-old daughter.

15.      Plaintiffs Dana and Kenneth McWhite have lived in Buffalo since 2016. Their five-year-old son and three-year-old daughter have lived in Buffalo their entire lives. Their son was hospitalized related to the implementation of eight crowns when he was four-years-old. Plaintiffs Dana and Kenneth McWhite bring suit individually and on behalf of their minor children, C.M. and M.M.

16.      Plaintiff Antwanett Williams and her minor son rent and live in the City of Buffalo.

17.      Plaintiff Antwanett Williams has lived in the City of Buffalo her entire life. Her five-year-old son, A.D., has also lived in Buffalo his entire life. Plaintiff

Antwanett Williams brings suit individually and on behalf of her minor child, A.D.

18.    Plaintiff Rahwa Ghirmatzion rents and lives in a home in the City of Buffalo with her minor son.

19.    Plaintiff Rahwa Ghirmatzion has lived in the City of Buffalo her entire life.  Her nine-year-old son, S.H., has also lived in Buffalo his entire life. Plaintiff Rahwa Ghirmatzion brings suit individually and on behalf of her minor child, S.H.

20.    Plaintiff Rebecca Whipple has owned a home on Vermont Street, Buffalo, NY 14213 since 2011.  She lived at that home from 2010 until 2019. Plaintiff Nolan Whipple lived in Buffalo from 2013 until 2019, and lived at the home on Vermont Street from 2014 until 2019.  Their daughter, H.W., lived at the home on Vermont Street in Buffalo from her birth in 2017 until 2019.

21.    As a result of the harm caused by the lack of fluoridation, H.W. was hospitalized for major dental surgery in 2023 at the age of five-years-old.

22.    Plaintiffs Rebecca and Nolan Whipple bring suit individually and on behalf of their minor child, H.W.

23.    Plaintiff Susan Gillick owns and lives in a home in the City of Buffalo with her husband.

24.    Plaintiff Susan Gillick has lived in the City of Buffalo her entire life. She has lived at her current home for about 45 years.

25.    Plaintiffs Felicia Richardson and Richard Richardson own and live in a home on the East Side of the City of Buffalo with their grandsons, ages 11-

year-old and nine-year-old. Felicia and Richard Richardson are the legal guardians of the two grandsons.

26.    Plaintiffs Felicia and Richard Richardson have owned and lived in a home in the City of Buffalo since 2017. Their grandsons have also lived in Buffalo since 2017. Plaintiffs Felicia and Richard Richardson bring suit individually and on behalf of their minor grandchildren, J.R., and J.R.

27.    Plaintiff Abdukadir Abdullahi was and still is a resident of the City of Buffalo, County of Erie, and the State of New York.

28.    Plaintiff Abdukadir Abdullahi lives with his six children, ages 9 to 16. To date, Plaintiff and two of his children have diagnosed cavities as a result of Buffalo's failure to provide a healthful environment with fluoridated public water.

29.    Plaintiff Abdukadir Abdullahi brings suit individually and on behalf of his minor children, F.A., K.A., H.A., H.A., A.A., and N.A.

30.    Defendant City of Buffalo ("City") is a municipal corporation created and existing under the laws of the State of New York.

31.    The City of Buffalo oversees and controls the Buffalo Water Board.

32.    Defendant Buffalo Water Board is a public benefit corporation duly organized and existing under and by virtue of the laws of the State of New York, and maintains an office for the transaction of business located within the County of Erie and the State of New York.

33.    The Buffalo Water Board was created to "operate, maintain and improve the water system in a manner that supports economic development and

to provide customers with cost effective, reliable and professional water services."
The Buffalo Water Board has acknowledged its "role as a Public Health provider."

34.    The residents of the City of Buffalo ("Class Members", "Buffalo's Residents"), including the Plaintiffs, are consumers, as defined by General Business Law § 349, who purchase water from the Buffalo Water Board (either directly or indirectly through the payment of rent) with the knowledge, consent and to the benefit of the City of Buffalo.

35.    Defendant Buffalo Municipal Water Finance Authority is a public benefit corporation of the State of New York and is vested with the powers and duties described in the Buffalo Municipal Water Finance Authority Act of the State of New York and other applicable law.

36.    The Buffalo Municipal Water Finance Authority's powers include the power to enter into agreements with the Buffalo Water Board and the City of Buffalo to finance "Water Projects," as such term is defined in the Buffalo Municipal Authority Finance Authority Act, to assist the Buffalo Water Board to "operate, maintain and keep in good repair the Buffalo Water System to serve its customers."

37.    At all relevant times, the Class Members had a reasonable expectation and belief that Buffalo's public water supply was being continuously fluoridated as state and federal agencies have been recommending for decades.

38.    Defendant McFoy has stated that "Buffalo Water's role as a Public Health provider is to ensure safe drinking water for all our residents."

39.    At all relevant times, Defendant Byron W. Brown was and is the

Mayor of the City of Buffalo, acting in the capacity of chief executive officer, agent, servant, and employee of Defendant City, within the scope of his employment as such, and acting under color of state law. As Mayor of the City of Buffalo, Defendant Brown is the chief policy making official for the City and all of its agencies, including the Buffalo Water Board. He is responsible for ensuring that Buffalo Water Board personnel provide public water that complies with the standards expected by the Plaintiffs and Class Members and as set by state and federal officials and health agencies. Defendant Brown is sued in his official and individual capacities.

40.    At all relevant times, Defendant Oluwole A. McFoy was and is the Chairman of the Buffalo Water Board, and acts under color of state law in the capacity of agent, servant, and employee of Defendant City. Defendant McFoy was appointed as Chairman of the Buffalo Waterboard by Defendant Brown in 2007 and continues to serve in this role.

41.    As Chairman of the Buffalo Water Board, Defendant McFoy led a 2010 management team transition, negotiating a $55 million, ten-year public/private agreement with Defendants Veolia Water North America-Northeast, LLC and Veolia North America, LLC "to provide reliable and professional delivery of drinking water" for the City of Buffalo.

42.    Defendant McFoy serves on national, state, and regional boards related to the water sector, including serving as the President of US Water Alliance, Treasurer of the National Association of Clean Water Agencies, Water Agency Leaders' Alliance and SUNY College of Environmental Science and

Forestry with focuses on "expanding equitable public health policies" and "ensuring that water services are equitably delivered and are affordable for all residents."

43.     As Chairman of the Buffalo Water Board, Defendant McFoy is responsible for providing public water that complies with the expectations of the Plaintiffs and Class Members and the standards set by federal and state officials and health agencies.  Defendant McFoy is sued in his official and individual capacities.

44.     Defendants Veolia Water North America-Northeast, LLC and Veolia North America, LLC ("Veolia") were and still are foreign corporation authorized to do business within the State of New York.

45.     In 2010, for the benefit of the Plaintiffs and Class Members, the Buffalo Water Board entered a $55 million, ten-year public/private agreement with Veolia to provide healthful, reliable, and professional delivery of drinking water for Buffalo's Residents.

46.     In 2020, the agreement with Veolia was extended for ten years at $7.8 million per year.  Under the terms of that agreement, Veolia will be paid another $78 million from 2020-2029 under and operations and maintenance contract related to Buffalo's water supply.

**FLUORIDATED WATER IS CRITICAL FOR A HEALTHFUL ENVIRONMENT**

47.    Dental caries, sometimes referred to as tooth decay, is an infectious disease in which bacteria dissolve the enamel surface of a tooth.  If not addressed, the bacteria can penetrate the underlying dentin and progress into the soft pulp tissue.  Dental caries can result in the loss of tooth structure and discomfort.  Untreated caries can lead to incapacitating pain, a bacterial infection that leads to pulpal necrosis, tooth extraction and loss of dental function, and may progress to an acute systemic infection.

48.    Many dentists use the word "cavity" to describe the presence of caries or tooth decay.  A cavity is a hole that has formed in a tooth resulting from caries or decay.

49.    Tooth decay contributes to reduced quality of life and increased need for costly restorative dental care.

50.    People who consume fluoridated water experience fewer and less severe cavities, resulting in a reduced need for filling and removing or replacing teeth, and less time taken off from school or work because of dental problems or pain.

51.    Extensive research has confirmed that controlled addition of fluoride to drinking supplies has resulted in significant reduction in dental caries throughout the world.

52.    Fluoride is a mineral that is found naturally in lakes, rivers, and other waters.  Healthful communities add fluoride to their drinking water because it is proven to prevent dental caries and cavities.

53.     Drinking fluoridated water keeps teeth strong and reduces dental caries and cavities.

54.     Community water fluoridation (CWF) is the controlled addition of a fluoride compound to a public water supply to achieve a concentration optimal for dental caries and cavities prevention.

55.     A city like Buffalo must supply fluoridated water for its environment to be healthful.

56.     Indeed, fluoridated water works by maintaining optimal levels of fluoride in a person's mouth throughout each day.  Fluoride and water mix with saliva and are absorbed by dental plaque, and the fluoride bonds with any weakened tooth enamel which it encounters.

57.     When asked in a recent interview on WBEN whether it was important that there is fluoride in the drinking water, Defendant McFoy recently stated that "we agree with the CDC recommendations that fluoride prevents tooth decay and the best way to do it is by getting it in the community's waterway, that is the most consistent way.  So we are firmly behind fluoridation in drinking water."

58.     The Buffalo Water Board has cited the Centers for Disease Control and Prevention (CDC) while proclaiming to the public that "fluoride is very effective in preventing cavities when present in drinking water at an optimal range."

59.     According to the CDC and the New York State Department of Health (NYSDOH), drinking fluoridated water reduces cavities for children and adults

by about 25%.

60.     In 2016, then-Surgeon General Dr. Vivek H. Murthy in his "Statement on Community Water Fluoridation," stated:

> Water fluoridation is the best method for delivering fluoride to all members of the community, regardless of age, education, income level or access to routine dental care. Fluoride's effectiveness in preventing tooth decay extends throughout one's life resulting in fewer – and less severe – cavities. In fact, each generation born over the past 70 years has enjoyed better dental health than the one before it. That's the very essence of the American promise.

61.     Since 1950, the American Dental Association (ADA) has continuously and unreservedly endorsed the optimal fluoridation of community water supplies as a safe and effective public health measure for the prevention of tooth decay and a healthful population and environment.

62.     Since the 1960s, community water fluoridation has been officially endorsed by the World Health Organization ("WHO"). The WHO has passed several World Health Assembly Resolutions relating to fluoridation and dental health and the use of fluoride for prevention of dental caries. The most recent such resolution urges Member States to ensure populations benefit from appropriate use of fluoride through the "implementation of fluoridation programmes [sic], giving priority to equitable strategies such as the automatic administration of fluoride, for example, in drinking-water."

63.     New York supports community water fluoridation "as a significant and cost effective public health measure." New York has stated that CWF is "a safe and effective practice to help prevent and control tooth decay."

64.     As reported by WBEN, Dr. Bernie Kolber of the Buffalo Dental Group

has stated: "The waters in just about all municipal locations have been fluoridated since the 1960s, and it's been very, very effective at reducing a lot of dental decay, especially in kids."

65.     Dr. Kolber explained that fluoride "hardens the enamel of the teeth and is probably the most effective thing that can be done to prevent dental decay."

66.     Fluoridation has been identified as the most practical and cost-effective method of delivering fluoride to all members of a community, regardless of age, education, or income.

67.     Per capita annual costs for community water fluoridation are as little as $0.11 for urban communities, while per capita annual benefits are as high as $93.19.  Thus, as a result of Defendants failing to supply fluoride for over seven years, the damage to the community of over 250,000 Buffalo's Residents over the past 7 years, and counting, is over $160,000,000 in lost economic benefit to the Class Members.

68.     Due to the cost-effectiveness and proven medical benefits of water fluoridation, in 1999, the CDC recognized community water fluoridation as one of the ten great public health achievements of the 20th Century.

69.     According to the CDC, school children in communities with water fluoridation have, on average, two fewer decayed teeth than children in communities that do not fluoridate.

70.     According to the CDC, fluoridation of water reduces enamel caries in adults by 20%-40% and prevents caries on the exposed root surfaces of teeth,

a condition that particularly affects older adults.

71.     The CDC's Community Preventive Services Task Force "recommends community water fluoridation based on strong evidence of effectiveness in reducing dental caries across populations.  Evidence shows the prevalence of caries is substantially lower in communities with [community water fluoridation.]."

72.     According to the President of the New York State Dental Association, "[c]ommunity water fluoridation is the safest, most efficient and cost-effective way to deliver fluoride to everyone in a community."

73.     According to a report from WKBW, Dr. Sarah Ventre, a general pediatrician, "fluoride is crucial for your dental health, especially for kids and older adults."

74.     According to the American Academy of Pediatrics, and their Campaign for Dental Health, through the fluoridation of public water, "[w]e're ***building healthy communities***."  (emphasis added).  The Academy explains that: "[c]ommunity water fluoridation helps all of us – the entire community – prevent unnecessary dental problems before they begin."

## DEFENDANTS HAVE DEPRIVED BUFFALO'S RESIDENTS OF FLOURIDATED WATER

75.     Defendant Buffalo Water Board has misrepresented and continues to misrepresent to Plaintiffs and Class Members (on its official website, at https://buffalowater.org, accessed on January 30, 2023) that it "adds a low level of fluoride to drinking water in order to provide consumer dental health protection."

76.     While noting, "[a]ccording to the United States Centers for Disease Control, fluoride is very effective in preventing cavities when present in drinking water at levels that range from 0.8 to 1.2 mg/l (parts per million)," Defendant Buffalo Water Board continues to represent on its website that "[o]ur fluoride addition facility is designed and operated to meet this optimal range."

77.     In describing its current treatment process of Buffalo's water system on its website, Defendant Buffalo Water Board continues to explain that "[g]ravity delivers the water through a conduit where chlorine and fluoride are added . . . Fluoride is added to guard against tooth decay."

6087361v1 - 072141.0001

78.    Defendant Buffalo Water Board's website continues to represent that fluoride is being added to Buffalo's water system in a "Water Treatment Schematic" uploaded to the website in 2019.  The Water Treatment Schematic continues to indicate as of January 2023 that fluoride is being added to Buffalo's water system (highlighted added by Plaintiffs).



79.    Despite these continuing promises and misrepresentations to Plaintiffs and Class Members, in 2015, unbeknownst to Plaintiffs or the Class Members, the City of Buffalo, its Mayor, Bryon W. Brown ("Brown"), the Buffalo Municipal Water Finance Authority, the Buffalo Water Board, its Chairman Oluwole A. McFoy ("McFoy"), and Veolia inexplicably stopped adding fluoride to Buffalo's drinking water while continuing to falsely misrepresent in publicly available information that fluoride was being added.

80.    In recent days, Defendant McFoy has issued several statements

about the timeline relating to the lack of fluoride in Buffalo's water.

81.     In 2015, the City of Buffalo, the Buffalo Water Board, and the Buffalo Municipal Water Finance Authority received $300,000 to modify the process by which fluoride was added to Buffalo's water system, but it did not do so.

82.     Instead, Defendants inexplicably continued to misrepresent in publicly available documentation that fluoride was being added to Buffalo's water when, in fact, Defendants stopped fluoridation of Buffalo's drinking water in 2015 without providing any material or adequate notice to Buffalo's Residents, including Plaintiffs.

83.     Indeed, on June 22, 2015, the City of Buffalo (and Defendant Brown), the Buffalo Water Board (and Defendant McFoy), the Buffalo Municipal Water Finance Authority, and Veolia stopped the fluoridation of Buffalo's water supply.

84.     Defendant McFoy has claimed that at some point after halting the fluoridation of the City's water without providing any adequate notice or following the process required under state law, the Buffalo Water Board and the Buffalo Municipal Water Finance Authority *then* decided to study whether the planned new process for fluoridation was "safe."

85.     To date, Defendant McFoy has not explained why fluoridated water was not continued using the existing process while the "new" process was being studied.  Upon information and belief, there was no safety reason to stop fluoridating the water using the existing process while the "new" process was

being studied.

86.     Moreover, upon information and belief, at the time, the scientific community was well-aware that water fluoridation was safe in cities like Buffalo, even when lead pipes were delivering the fluoridated water to the consuming public.

87.     Defendant McFoy has claimed that that study was completed in 2019, and that the study confirmed what science already knew: that the "new" intended fluoridation process was safe.

88.     Now, in 2023, without any explanation at all, the City of Buffalo (and Defendant Brown), the Buffalo Water Board (and Defendant McFoy), the Buffalo Municipal Water Finance Authority, and Veolia have *still* not resumed the fluoridation of the City's water.  Class Members, including Plaintiffs, did not learn of that reality until earlier this month through media investigations and reports.

89.     While they misrepresented on publicly available documentation that fluoride was being added to the water, Defendants Buffalo Water Board, Buffalo Municipal Water Finance Authority, McFoy, and Veolia failed to include any notice that fluoridation of Buffalo's water was, in truth, being stopped, or had been stopped, in any of the bills that were provided to consumers of the water, Buffalo's Residents.

90.     Nor did Defendants deliver any information about it to the health or dental communities.  Nor did they run a public relations campaign to inform the community.  They did not even bother to issue a free press release to print, radio

or TV media.  As a result, the Plaintiffs and Class Members were completely unaware that fluoridated water had ceased in the City of Buffalo for nearly 8 years as of this writing.

91.     The only indication that Defendants had halted the fluoridation of Buffalo's drinking water was purposefully hidden in small font, buried deep in the minutiae of annual water quality reports.  Many Buffalo civic leaders, dentists, and residents are already on record as having never been informed that fluoridation of Buffalo's water had ended.

92.     After 2018, the Buffalo Water Board stopped mailing City residents the annual water quality report, and instead began sending a mailer directing residents to read the report online.  The mailers could have, but did not, disclose the fact that fluoridated water was not being provided, which is *prima facie* evidence of the surreptitious nature of the Defendants' actions.  Indeed, if the Defendants did not intend to intentionally hide the fact that fluoridation had ceased, they could have easily disclosed that fact effectively in the mailers, but they did not do so.

93.     Instead, the Defendants continued to sell non-fluoridated water to the Plaintiffs and Class Members in a false, fraudulent and deceptive manner, continuing to cultivate Plaintiffs' and Class Members' reasonable belief that the public water supply complied with the standards recommended by state and federal authorities when they did not.

94.     Indeed, by Defendant McFoy's own public admissions, in 2018, the Buffalo Water Board stopped providing any estimate of when, if ever, it would

restore fluoridation to the City's water.  Instead, it wrote in tucked away, hidden, and small font that "we do not expect fluoride addition to be restored until completion of various capital projects."

95.    The cessation of the fluoridation of Buffalo's water has not been highlighted in any of those reports.

96.    The introduction to the 2021 Report opens with "[t]o comply with State regulations, Buffalo Water (managed by Veolia NA) provides an annual report describing the quality of your drinking water."

97.    In the most recent report available of the Buffalo Water Board's website, "Annual Drinking Water Quality Report for Calendar Year 2021", the Buffalo Water Board and Veolia, discreetly declined to state when fluoridation would be restored and simply stated that it would be some time after "completion of various capital projects."

98.    In every annual report since 2015, often in large text with a color unique from the rest of the text in the report, and always on the first page of the report, Defendants have included either the sentence "[l]ast year, your tap water met all State drinking water standards" or "[l]ast year, your tap water met all State drinking water health standards."  These statements are false.  In truth, Buffalo's public water did not comply with accepted state or national water health standards.

## BUFFALO'S WATER NO LONGER CONTAINS
## THERAPEUTIC LEVELS OF FLUORIDE

99.    As a result of Defendants' 2015 decision to stop fluoridation, Buffalo's water now has far lower amounts of fluoride than is recommended by federal and state public health agencies and public health experts.

100.    The CDC recommends an optimal fluoride concentration of 0.7 parts per million in community water systems.

101.    According to Buffalo's 2021 water quality report, the fluoride concentration in Buffalo's water in 2021 was 0.13 parts per million, less than one fifth of the level recommended by the CDC.

102.    Dr. Joseph E. Gambacorta, associate dean for academic and faculty affairs at the University of Buffalo's School of Dental Medicine expressed the appalling nature of Defendant's actions: "No one in organized dentistry knew that the water in Buffalo has not been fluoridated and the fluoridation stopped in 2015." Dr. Gambacorta continued, "[i]t's not that there was any type of memo sent or any type of consultation, 'If we do this, what will be the result?' There was never any dialogue between the university, organized dentistry or the dental profession to discuss this issue."

103.    Dentists at Erie County Medical Center said they were shocked to learn the Buffalo Water Board has not been fluoridating the City's drinking water since 2015.

104.    As reported by Spectrum News, Dr. Courtney Peterson, a pediatric dentist at ECMC, stated that the lack of fluoridation likely played a role in a recent rise in cavities in Buffalo.

6087361v1 - 072141.0001

105.    Dr. Peterson stated: "I've noticed a big uptick in kids with cavities and not just simple cavities like full-mouth carries."

106.    Dr. Peterson stated that if local dentists had known that Defendants had stopped fluoridating Buffalo's water, "[w]e probably would have been more proactive with some of our treatments." Dr. Peterson stated that upon the recent discovery of the lack of fluoridation of Buffalo's water, she will begin to educate her patients on other ways to receive a healthy amount of fluoride.

107.    Upon information and belief, if Buffalo dentists, Plaintiffs and the Class Members had been made aware of the change to the City's fluoridation, they would have had an opportunity to mitigate and/or eradicate the damage caused by the Defendants, but that opportunity has been lost for nearly 8 years as of this writing due to Defendants' star chamber activities.

108.    Dr. Michael Foley, a local oral surgeon, stated: "My jaw dropped" upon learning that the city has not added fluoride to the water since 2015. Dr. Foley continued "[t]hat's a big community heath initiative that doesn't cost a lot of money. Nobody on the public health side of things really told the community whatsoever."

109.    Dentists are particularly concerned about the lack of fluoridated waters for young people, elderly people, and pregnant mothers, who consume fluoride and help their babies begin to develop stronger teeth as young as 10 weeks.

110.    Upon information and belief, the scope of the injuries to Buffalo residents as a result of the lack of fluoridation is not yet fully known because the

6087361v1 - 072141.0001

23

harm caused by the lack of access to fluoride since 2015 will impact the dental health of Buffalo's Residents for the rest of their lives.

111.    The President of the New York State Dental Association stated that "[i]t is critical to the oral health of the community that the Buffalo Water Board return to adding fluoride into the city water as early in 2023 as possible."

## PROPER NOTICE WAS NOT PROVIDED

112.    New York State Public Health Law Section 1100-A states:

> (3.) No county, city, town or village . . . that fluoridates a public water supply or causes a public water supply to be fluoridated shall discontinue the addition of a fluoride compound to such public water supply unless it has first complied with the following requirements:
>
> > (a) issues a notice to the public of the preliminary determination to discontinue fluoridation for comment, which shall include the justification for the proposed discontinuance, alternatives to fluoridation available, and a summary of consultations with health professionals and the department concerning the proposed discontinuance . . .
> >
> > (b) provide the department at least ninety days prior written notice of the intent to discontinue and submit a plan for discontinuance that includes but is not limited to the notice that will be provided to the public . . . of the determination to discontinue fluoridation of the water supply, including the date of such discontinuance and alternatives to fluoridation, if any that will be made available in the community . . .

113.    The City of Buffalo (and Defendant Brown), the Buffalo Water Board (and Defendant McFoy), the Buffalo Municipal Water Finance Authority, and Veolia acted in complete contravention of State Law in discontinuing the access to fluoridated water in the City of Buffalo without providing adequate notice to Buffalo residents and without completing any of the other steps that are necessitated under Public Health Law Section 1100-A.

6087361v1 - 072141.0001

24

114.    Defendants did not issue the required notice to Buffalo's Residents of a "preliminary determination" to discontinue fluoridation.

115.    Defendants did not provide the required justification for the proposed discontinuation of fluoridation to Buffalo's Residents.

116.    Defendants did not provide the required information about available alternatives to obtain healthful amounts of fluoride to Buffalo's Residents.

117.    Defendants did not provide the required summary of consultations with health professionals and the State concerning the proposed discontinuation of fluoridation to Buffalo's Residents.

118.    Defendants did not provide Buffalo's Residents with any period during which they could comment on a proposed discontinuation of the fluoridation of the water, and did not provide any opportunity or mechanism to offer such comments.

119.    Upon information and belief, Defendants failed to provide NYSDOH with ninety days prior written notice of their intent to discontinue the fluoridation.

120.    Upon information and belief, Defendants failed to provide NYSDOH with a plan for discontinuation of the fluoridation of the water that included the notice that was to be provided to Buffalo's Residents.

121.    In fact, rather than doing *any* of the numerous, clear, specific steps required for a municipality in New York State to discontinue fluoridation, Defendants' star chamber completed *none* of the requirements.

122.    Upon information and belief, all Defendants, including Defendant

Brown, failed to take any steps, such as sending out a simple and free press release, to notify the public that the City would no longer be providing fluoridated water.

123.    The Buffalo News has reported that it has been unable to find any mention of the change to Buffalo's water fluoridation in any media report in the last seven years.

124.    Defendants provided *no* meaningful prior notice to Buffalo's Residents that Defendants would be stopping the addition of fluoride to Buffalo's drinking water.

125.    Rather, the Buffalo Water Board, the Buffalo Municipal Water Finance Authority, Veolia and the City of Buffalo only ever provided mailings that mentioned the change in small type on the last page of a government water quality report in annual reports in 2016 and 2017.

126.    Defendants stopped mailing water quality reports to customers altogether in 2018.

127.    Defendants knew or should have known the Plaintiffs and Class Members do not generally spend their time reading such reports.

128.    Remarking upon the utter insufficiency of the Defendants' notice to Buffalo's Residents relating to the stunning decision to deny access to fluoridated water, The Buffalo News' Editorial Board wrote: "All Buffalonians who read the small type on the last page of the city's water quality report from 2015, please raise your hand. No one? It wouldn't be a surprise."

129.    Defendant Mayor Byron Brown appears to be an example of a person

who did not notice the fine print on the last page in the city's mailer – Defendant Brown has stated "[l]ike others, I was not immediately notified, but I should have been, and we should have put the information out to the community.  No excuse for it."

130.    Defendant Brown claims that the decision by Defendant Buffalo Water Board and Defendant McFoy "was not immediately brought to [his] attention."

131.    Defendant Brown highlighted the inadequacy of the notice provided by Defendants: "A lot of people don't read those documents, so it probably would have been the best approach to release that to the community."

132.    Councilmember Rasheed N.C. Wyatt harshly criticized Defendants' actions and the lack of information provided to the public about the depravation of the fluoridation: "I absolutely do not think that's sufficient . . . That shouldn't have been done without any community input.  That's just kind of ridiculous."

133.    David A. Rivera, the Majority Leader of the Buffalo Common Council, has been on the Council since 2007.

134.    Councilmember Rivera told The Buffalo News in January 2023 that he was "very surprised" to learn that Buffalo had stopped adding fluoride to its water and that the News "had information that I didn't even have."  He continued, "I think [the news that Buffalo stopped adding fluoride to its water] surprised many of the Council members and the residents."

135.    Former Councilmember David Franczyk (whom served on the Buffalo Common Council from 1986-2020) explained on WBEN on May 3, 2023

that his regular review of the Water Quality Reports did not put him on notice that fluoridation had been stopped:

> I tried to read every piece of paper that came before me . . . I do not recall seeing that fluoride report because I must have received the report as well. ***It must have been written in such esoteric, technical language . . . I think those are written in a matter to shroud that information. They should have put it front and center.*** They should have had a press conference. So, I fault the Water Authority for that one." (emphasis added).

136.    Per a report by WGRZ, Councilmember Rivera "has been getting non-stop calls from the community concerned over the lack of fluoride in the water."

137.    Commenting upon the mailed notices to city residents, Councilmember Rivera stated, "[i]f you're going to bury it in the fine print, I just don't understand why you don't just come out . . . openly and publicly explain." He protested: "The fact that there was no community engagement – next to none – is bothersome."

138.    The lack of "community engagement" – Defendants' failure to provide adequate notice – is not only bothersome, it breaks New York law.

139.    On January 18, 2023, Councilmember Rivera mailed a letter to Defendant McFoy requesting that Mr. McFoy appear before the Buffalo Common Council to provide information as to: "1) why the Buffalo Water Authority is no longer adding fluoride to our water; 2) when or how City residents were made aware of this change; and 3) whether or not there are potential health implications of drinking unfluoridated water, especially in children."

140.    In a recent interview, when confronted about the lack of notice

provided to the people of Buffalo about the discontinuation of fluoridating Buffalo's water, Defendant McFoy admitted: "I think in hindsight, you know, maybe we could have put more things out on that."  He has also stated "maybe we could have done a better job of doing that."

141. Defendant McFoy also declared, "I think that's what we've been hearing is that maybe we needed to be a little bit more deliberate about getting that information out."

## THE DAMAGE TO THE PEOPLE OF BUFFALO

142. As detailed above, community water fluoridation is critical for the oral health of a community.

143. Unbeknownst to Buffalo's Residents, Defendants were responsible for cutting off the fluoridation of the drinking water provided to the homes, businesses, and public places in Buffalo.

144. Due to the lack of fluoridation, the dental health of Buffalo's Residents has been significantly harmed and is at risk.

145. Dr. Sarah Ventre, a general pediatrician in Buffalo, stated "[i]t definitely came as a surprise to me, and I know other pediatricians that I work with, they were also not aware of this."

146. Dr. Ventre highlighted that the lack of knowledge about the cessation of fluoridation exacerbated the harm: "I personally feel bad because I haven't been properly counseling parents about the lack of fluoride in the tap water."

147. Alternative possibilities for strengthening teeth in the absence of

Defendants providing fluoridated water include fluoride toothpaste, fluoride mouthwash, dietary supplements, and fluoride treatments at dental offices for those who could afford those mitigation measures. Due to Defendants' failure to provide suitable notice that they had stopped fluoridating the water, Buffalo's Residents were deprived the opportunity to seek alternative sources of fluoride and have been damaged and are at risk as a result.

148.    As detailed above, numerous extensive and respected studies have led state, federal, and international health organizations to recommend community water fluoridation because of its documented success in preventing dental caries and cavities.

149.    Dental disease can cause many health issues, such as harming individuals' hearts and lungs, causing or worsening diabetes, pre-eclampsia, and affecting mental acuity.

150.    Children and adults with good oral heath are better able to eat, sleep, and interact with others.

151.    Due to the lack of fluoridation of Buffalo's drinking water for over nearly eight years, local leaders and health practitioners have remarked that the dental health of the community has been harmed.

152.    In the reporting since the bombshell report in The Buffalo News, numerous dentists and oral surgeons have remarked upon the recent surge in dental problems that they have observed in Buffalo in the last few years.

## BUFFALO'S SOCIOECONOMIC AND RACIAL DISPARITIES CONTINUE

153.    According to the CDC, community water fluoridation is especially beneficial and healthful for communities of disadvantaged socioeconomic status. Such communities have a disproportionate burden of dental caries and have less access to dental-care services and other sources of fluoride.

154.    The burden of poor oral health is greater among people in households with lower income.

155.    The burden of poor oral health is disproportionately higher among many members of racial/ethnic minority groups.

156.    Tooth decay is one of the most chronic diseases among America children.  One of four children living below the federal poverty level experience untreated tooth decay.

157.    Access to fluoridated water helps reduce dental health disparities.

158.    Buffalo School Board Member Larry Scott stated that alternative options for strengthening teeth are "unrealistic for the majority of our children and families that are living in poverty."

159.    Mr. Scott explained: "We have so many families, so many children that are dealing with trauma, dealing with loss, violence in their neighborhood, and the last thing they need to be worried about is fluoride treatments that every other child and family in Western New York, it appears, don't have to worry about."

160.    According to a report from WKBW, Dr. Ventre stated "untreated dental caries are substantially more prevalent among kids and the low-income

and below the poverty line."

161.  Many Buffalo residents are not able to visit a dentist on a regular basis, or ever.  Some Class Members cannot afford toothbrushes or toothpaste.

162.  Thus, access to fluoride from City's water supply is particularly important for City residents who do not have access to regular dental care.

163.  Because of these realities, fluoridation is an issue of public health equity and justice.

164.  Black and Mexican American Children between the ages of 2 to 5 years were more likely to have decay than White children, according to data from the National Institute of Health (NIH)'s National Institute of Dental and Craniofacial research.  Children living in families with low incomes were twice as likely to have decay in their primary teeth as children from families with high incomes.

**Table 1. Percent of Children Ages 2 to 5 Years with Caries in the Primary Teeth**

| Characteristic | Percent with caries in the primary teeth, 1999–2004 | Percent with caries in the primary teeth, 2011–2016 |
|---|---|---|
| *Sex* | | |
| Male | 30.1 | 24.0 |
| Female | 25.8 | 22.4 |
| *Race and Ethnicity* | | |
| White, non-Hispanic | 23.8 | 17.9 |
| Black, non-Hispanic | 31.6 | 28.0 |
| Mexican American | 41.3 | 32.9 |
| *Poverty Status* (Income compared to Federal Poverty Level) | | |
| Less than 100% FPL | 41.8 | 33.9 |
| 100% to 199% FPL | 30.4 | 24.4 |
| Greater than 200% FPL | 17.8 | 15.7 |
| *Overall* | **27.9** | **23.3** |

165. According to the NIH data, for the ages of 2 to 5 years, Black and Mexican American children and those living in families with low incomes were twice as likely to have untreated decay than White children and children living in families with high incomes.

6087361v1 - 072141.0001

**Table 2. Percent of Children Ages 2 to 5 Years with Untreated Caries in the Primary Teeth**

| Characteristic | Percent with untreated caries in the primary teeth, 1999–2004 | Percent with untreated caries in the primary teeth, 2011–2016 |
|---|---|---|
| *Sex* | | |
| Male | 21.2 | 11.1 |
| Female | 19.8 | 9.5 |
| *Race and Ethnicity* | | |
| White, non-Hispanic | 16.9 | 6.7 |
| Black, non-Hispanic | 24.3 | 14.8 |
| Mexican American | 30.8 | 15.1 |
| *Poverty Status* (Income compared to Federal Poverty Level) | | |
| Less than 100% FPL | 31.3 | 17.2 |
| 100% to 199% FPL | 23.1 | 9.9 |
| Greater than 200% FPL | 12.9 | 6.0 |
| *Overall* | **20.5** | **10.4** |

166.    According to the NIH data, for the ages of 6 to 8 years, Black and Mexican American children and those living in families with low incomes were more likely to have decay than White children and children living in families with high incomes.

**Table 3. Percent of Children Ages 6 to 8 Years with Caries in the Primary Teeth**

| Characteristic | Percent with caries in the primary teeth, 1999–2004 | Percent with caries in the primary teeth, 2011–2016 |
|---|---|---|
| *Sex* | | |
| Male | 54.2 | 55.4 |
| Female | 48.6 | 48.1 |
| *Race and Ethnicity* | | |
| White, non-Hispanic | 47.6 | 43.9 |
| Black, non-Hispanic | 53.4 | 53.8 |
| Mexican American | 65.2 | 72.8 |
| *Poverty Status* (Income compared to Federal Poverty Level) | | |
| Less than 100% FPL | 65.7 | 64.4 |
| 100% to 199% FPL | 61.1 | 60.1 |
| Greater than 200% FPL | 39.4 | 40.4 |
| *Overall* | **51.5** | **52.1** |

167.    According to the NIH data, for the ages of 6 to 8 years, Black and Mexican American children and those living in families with low incomes were twice as likely to have untreated decay than White children and children living in families with high incomes.

## Table 4. Percent of Children Ages 6 to 8 Years with Untreated Decay in the Primary Teeth

| Characteristic | Percent with caries in the primary teeth, 1999–2004 | Percent with caries in the primary teeth, 2011–2016 |
|---|---|---|
| *Sex* | | |
| Male | 29.4 | 17.4 |
| Female | 26.2 | 15.2 |
| *Race and Ethnicity* | | |
| White, non-Hispanic | 24.2 | 13.2 |
| Black, non-Hispanic | 34.8 | 22.4 |
| Mexican American | 37.7 | 20.0 |
| *Poverty Status* (Income compared to Federal Poverty Level) | | |
| Less than 100% FPL | 39.3 | 22.3 |
| 100% to 199% FPL | 35.2 | 20.9 |
| Greater than 200% FPL | 17.5 | 11.1 |
| *Overall* | 27.8 | 16.4 |

168.    According to the NIH data, for the ages of 6 to 11 years, Black and Mexican American children were more likely to have decay in their permanent teeth than White children.  Children from low-income households were twice as likely to have dental caries in their permanent teeth than those living in families with high incomes.

6087361v1 - 072141.0001

**Table 5. Percent of Children Ages 6 to 11 Years with Caries in the Permanent Teeth**

| Characteristic | Percent with caries in the permanent teeth, 1999–2004 | Percent with caries in the permanent teeth, 2011–2016 |
|---|---|---|
| *Age* | | |
| 6–8 years | 10.4 | 9.6 |
| 9–11 years | 31.4 | 24.7 |
| *Sex* | | |
| Male | 19.5 | 15.6 |
| Female | 22.9 | 19.0 |
| *Race and Ethnicity* | | |
| White, non-Hispanic | 18.8 | 13.4 |
| Black, non-Hispanic | 19.1 | 21.6 |
| Mexican American | 30.8 | 24.5 |
| *Poverty Status* (Income compared to Federal Poverty Level) | | |
| Less than 100% FPL | 28.4 | 24.6 |
| 100% to 199% FPL | 24.1 | 19.3 |
| Greater than 200% FPL | 16.5 | 12.0 |
| *Overall* | **21.2** | **17.4** |

169.    According to the NIH data, for the ages of 6 to 11 years, Black and Mexican American children and those living in families with low incomes were more likely to have decay than White children and children living in families with high incomes.

**Table 6. Percent of Children Ages 6 to 11 Years with Untreated Decay in the Permanent Teeth**

| Characteristic | Percent with untreated caries in the permanent teeth, 1999–2004 | Percent with untreated caries in the permanent teeth, 2011–2016 |
|---|---|---|
| *Age* | | |
| 6–8 years | 4.1 | 2.7 |
| 9–11 years | 11.1 | 7.6 |
| *Sex* | | |
| Male | 7.5 | 4.9 |
| Female | 7.9 | 5.5 |
| *Race and Ethnicity* | | |
| White, non-Hispanic | 5.6 | 4.3 |
| Black, non-Hispanic | 8.7 | 7.1 |
| Mexican American | 12.7 | 7.5 |
| *Poverty Status* (Income compared to Federal Poverty Level) | | |
| Less than 100% FPL | 11.8 | 8.1 |
| 100% to 199% FPL | 11.9 | 5.6 |
| Greater than 200% FPL | 3.6 | 3.5 |
| *Overall* | **7.7** | **5.2** |

170.    According to the CDC, community water fluoridation reduces the disparities in dental caries and cavities among poor and non-poor children.

## DEFENDANTS DAMAGED PLAINTIFFS AND CLASS MEMBERS

171.   Defendants' actions have deprived and will continue to deprive hundreds of thousands of people, including all of Buffalo's Residents, of their constitutionally protected right to a healthful environment.

172.   Defendants, without any material notice, have withheld and will continue to withhold fluoridated drinking water from Buffalo's Residents in violation of the Green Amendment.

173.   Plaintiff Robert Galbraith and Plaintiff Melissa Mosko own and live in a home on the East Side of Buffalo with their five-year-old son, F.G.

174.   Plaintiff Galbraith, Plaintiff Mosko, and their son have relied and continue to rely on Buffalo's water supply as their drinking water; the Mosko/Galbraith family uses Buffalo water to drink, cook, shower, clean, and brush their teeth.

175.   Plaintiff Galbraith, Plaintiff Mosko, and their son have been and continue to be harmed by Defendants failing to resume the fluoridation of Buffalo's drinking water.

176.   Plaintiffs Dana and Kenneth McWhite own and live in a home in Buffalo, NY with their five-year-old son and three-year-old daughter.

177.   Plaintiffs Dana and Kenneth McWhite have lived in Buffalo since 2016.  Their five-year-old son and three-year-old daughter have lived in Buffalo their entire lives.  Their son was hospitalized at John R. Oishei Children's Hospital of Buffalo and placed under anesthesia related to the implementation of eight crowns when he was four-years-old.

6087361v1 - 072141.0001

39

178.    Plaintiffs Dana and Kenneth McWhite, and their minor children, have relied and continue to rely on Buffalo's water supply as their drinking water; the McWhites use Buffalo water to drink, cook, shower, clean, and brush their teeth.

179.    Immediately upon learning in early 2023 that Defendants had ceased the fluoridation of Buffalo's water, the McWhites began to purchase and use fluoride treatment and gallons of drinking water treated with fluoride.

180.    Plaintiffs Dana and Kenneth McWhite, and their minor children, have been and continue to be harmed by Defendants failing to resume the fluoridation of Buffalo's drinking water.

181.    Plaintiff Antwanett Williams and her minor son rent and live in the City of Buffalo.

182.    Plaintiff Williams has lived in the City of Buffalo her entire life.  Her five-year-old son, A.D., has also lived in Buffalo his entire life.

183.    Plaintiff Williams and her son have relied and continue to rely on Buffalo's water supply as their drinking water; their family uses Buffalo water to drink, cook, shower, clean, and brush their teeth.

184.    Plaintiff Williams and her son have been and continue to be harmed by Defendants failing to resume the fluoridation of Buffalo's drinking water.

185.    Plaintiff Rahwa Ghirmatzion rents and lives in a home in the City of Buffalo with her minor son.

186.    Plaintiff Ghirmatzion has lived in the City of Buffalo her entire life. Her nine-year-old son, S.H., has also lived in Buffalo his entire life.

6087361v1 - 072141.0001

40

187.    Plaintiff Ghirmatzion and her son have relied and continue to rely on Buffalo's water supply as their drinking water; their family uses Buffalo water to drink, cook, shower, clean, and brush their teeth.

188.    Plaintiff Ghirmatzion and her son have been and continue to be harmed by Defendants failing to resume the fluoridation of Buffalo's drinking water.

189.    Plaintiff Rebecca Whipple has owned a home on Vermont Street in Buffalo since 2011.  She lived at that home from 2010 until 2019.  Plaintiff Nolan Whipple lived in Buffalo from 2013 until 2019, and lived at the home on Vermont Street from 2014 until 2019.  Their daughter, H.W., lived at the home on Vermont Street in Buffalo from her birth in 2017 until 2019.

190.    As a result of the harm caused by the lack of fluoridation, H.W. was hospitalized at John R. Oishei Children's Hospital of Buffalo and placed under anesthesia for major dental surgery in 2023 at the age of five-years-old.

191.    Plaintiffs Rebecca and Nolan Whipple, and their minor child, H.W., relied upon Buffalo's water supply as their drinking water; the Whipples used Buffalo water to drink, cook, shower, clean, and brush their teeth.

192.    Plaintiffs Rebecca and Nolan Whipple, and their minor child, have been and continue to be harmed by Defendants failing to resume the fluoridation of Buffalo's drinking water.

193.    Plaintiff Susan Gillick owns and lives in a home in the City of Buffalo with her husband.

194.    Plaintiff Gillick has lived in the City of Buffalo her entire life.  She

has lived at her current home for about 45 years.

195.   Plaintiff Gillick has relied and continues to rely on Buffalo's water supply as their drinking water; her family uses Buffalo water to drink, cook, shower, clean, and brush their teeth.

196.   Plaintiff Gillick has been and continues to be harmed by Defendants failing to resume the fluoridation of Buffalo's drinking water.

197.   Plaintiffs Felicia Richardson and Richard Richardson own and live in a home on the East Side of the City of Buffalo with their grandsons, ages 11-year-old and nine-year-old.   Felicia and Richard Richardson are the legal guardians of the two grandsons.

198.   Plaintiffs Felicia and Richard Richardson have owned and lived in a home in the City of Buffalo since 2017.   Their grandsons have also lived in Buffalo since 2017.

199.   Plaintiffs Felicia and Richard Richardson, and their minor grandchildren, have relied and continue to rely on Buffalo's water supply as their drinking water; the Richardsons use Buffalo water to drink, cook, shower, clean, and brush their teeth.

200.   Plaintiffs Felicia and Richard Richardson, and their minor grandchildren, have been and continue to be harmed by Defendants failing to resume the fluoridation of Buffalo's drinking water.

201.   Plaintiff Abdullahi is a single father who lives on the East Side of Buffalo with his six children.

202.   Plaintiff Abdullahi and his family have relied and continue to rely on

Buffalo's water supply as their drinking water; the Abdullahi family uses Buffalo water to drink, cook, shower, clean, and brush their teeth.

203.    From 2015 until recently, Plaintiff Abdullahi was unable to afford fluoridated toothpaste, fluoride treatments or any alternative sources of fluoride, and had no knowledge that Defendants stopped provided fluoridated drinking water to his home and community in 2015.  One of his children was born in 2014 and has not had fluoride in her drinking water for her entire life.

204.    To date, Plaintiff and two of his children (ages 15 and16) have been diagnosed with cavities.  Plaintiff Abdullahi has not had dental insurance and has been forced to pay out of pocket when dental issues arise with him or his children.

205.    Plaintiff Abdullahi and each of his children have been and continue to be harmed by Defendants failing to resume the fluoridation of Buffalo's drinking water.

## CLASS ACTION ALLEGATIONS

206.    This action is brought as and may be maintained as a class action under the provisions of Article 9 of the CPLR.

207.    The putative class is defined as all residents of the City of Buffalo at any time between June 22, 2015 and the present.

208.    Excluded from the Class are Defendants.

209.    The members of this putative class are so numerous that separate actions or joinder of parties, whether required or permitted, is impracticable.

210.    While Plaintiffs do not know the exact number of the members of the

Class, hundreds of thousands of people have lived in the City of Buffalo at various times since June 2015 and each of those people are Class Members.

211.    There are questions of law and fact common to the Class that predominate over any questions affecting only individual members of the Class.

212.    The principal common questions of law for the Class are whether Defendants violated Section 19 of Article 1 of the New York Constitution and the Public Health Law, General Business Law section 349 and the other causes of action pleaded herein by a) simultaneously claiming Buffalo's water was fluoridated when, in fact, b) Defendants were depriving Buffalo's Residents of fluoridated drinking water and, c) by failing to give proper and required notice of the star chamber decision to cease fluoridation of Buffalo's water.

213.    The principal common question of fact for the Class is whether the Class Members were each deprived of fluoridated drinking water by Defendants in contravention of the Constitution of the State of New York and the laws of the State of New York.

214.    Plaintiffs have no interests antagonistic to the interests of the other members of the Class.  There is no conflict between Plaintiffs and any other members of the Class with respect to this action or the claims for relief herein.

215.    Plaintiffs are committed to the vigorous prosecution of this action and have retained competent legal counsel experienced in constitutional law, health law and class action litigation matters for that purpose.

216.    Plaintiffs are adequate representatives of the Class and, together with their attorneys, are able to, and will fairly and adequately, protect the

interests of the Class and its members.

217.   A class action is superior to any other method for the resolution of this dispute, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured residents of Buffalo with a method of obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

218.   Plaintiffs and their counsel anticipate no difficulty in the management of this litigation as a class action.

### FIRST CAUSE OF ACTION
### Declaratory Judgment
### Against All Defendants

219.   Plaintiffs hereby repeat and allege the foregoing paragraphs as if the same were fully set forth at length herein.

220.   Heretofore and on or about the 21st day of February, 2023, a Notice of Claim was served on behalf of Plaintiffs Dana McWhite, Kenneth McWhite, and their minor children, upon CITY OF BUFFALO, BUFFALO WATER BOARD, BUFFALO MUNICIPAL WATER FINANCE AUTHORITY, BYRON W. BROWN, and OLUWOLE A. McFOY in duplicate, which Notice of Claim sets forth the name and post office address of Dana McWhite, Kenneth McWhite, and their minor

children, claimants, the name and post office address of their attorneys, the nature of the claim, the time when, the place where and the manner in which the claim arose, together with the items of damages and injuries then known to exist, and the said Notice of Claim was served upon defendants, CITY OF BUFFALO, BUFFALO WATER BOARD, BUFFALO MUNICIPAL WATER FINANCE AUTHORITY, BYRON W. BROWN, and OLUWOLE A. McFOY, within ninety (90) days of the date upon which the claim rose.

221. Similarly, Notices of Claim were served on behalf of: Plaintiffs Robert Galbraith, Melissa Mosko, and their minor child (on or about the 22nd day of February, 2023); Plaintiffs Antwanett Williams and her minor child (on or about the 1st day of March, 2023); Plaintiffs Rahwa Ghirmatzion and her minor child (on or about the 16th day of March, 2023); Plaintiffs Rebecca Whipple, Nolan Whipple, and their minor child (on or about the 16th day of March, 2023); Plaintiff Susan Gillick (on or about the 16th day of March, 2023); and Plaintiffs Felicia Richardson, Richard Richardson, and their minor grandchildren (on or about the 16th day of March, 2023) upon CITY OF BUFFALO, BUFFALO WATER BOARD, BUFFALO MUNICIPAL WATER FINANCE AUTHORITY, BYRON W. BROWN, and OLUWOLE A. McFOY in duplicate, which Notices of Claim sets forth the name and post office address of each respective plaintiff, the respective claimants in those Notices of Claim, the name and post office address of their attorneys, the nature of the respective claim, the time when, the place where and the manner in which the respective claim arose, together with the items of damages and injuries then known to exist, and the said Notices of Claim was

served upon defendants, CITY OF BUFFALO, BUFFALO WATER BOARD, BUFFALO MUNICIPAL WATER FINANCE AUTHORITY, BYRON W. BROWN, and OLUWOLE A. McFOY, within ninety (90) days of the date upon which the respective claim rose

222.    At least thirty (30) days have elapsed since the service of each Notice of Claim as aforesaid, and defendants, CITY OF BUFFALO, BUFFALO WATER BOARD, BUFFALO MUNICIPAL WATER FINANCE AUTHORITY, BYRON W. BROWN, and OLUWOLE A. McFOY, have failed and neglected to adjust or pay any of the said claims.

223.    Plaintiffs maintain that Notices of Claim are not required under the circumstances of these claims because they each seek to vindicate a public right, redress for a public harm, declaratory and injunctive relief with incidental damages; Plaintiffs filed Notices of Claim with a full reservation of their respective rights and without waiver in the event that any Defendant claims that a Notice of Claim for these claims is required despite the fact that it is not.

224.    Pursuant to CPLR 3001 *et seq.*, Plaintiffs seek a declaration from this Court that Defendants are violating Plaintiffs' and Class Members' constitutional rights under Article I §19 of the New York State Constitution by depriving Buffalo residents of fluoridated drinking water while simultaneously representing to the Plaintiffs and Class Members that Buffalo's water has been fluoridated when it was not.

## SECOND CAUSE OF ACTION
### N.Y. Constitution, Art. I, § 19 (the Green Amendment)
### Against All Defendants

225.    Plaintiffs hereby repeat and allege the foregoing paragraphs as if the same were fully set forth at length herein.

226.    Section 19 of Article I of the New York Constitution provides for "Environmental rights," and guarantees "[e]ach person shall have a right to clean air and water, and a healthful environment."

227.    Article I §19 recognizes and functions to preserve New Yorker's constitutional right to clean air, clean water, and a healthful environment. These inherent and inalienable rights reflect the basic societal contract between residents and the government of New York.

228.    Defendants' decision to claim Buffalo's water was fluoridated despite withholding fluoridation, and the continuing failure to recommence the fluoridation of Buffalo's water violate the constitutionally protected, affirmative rights of Plaintiffs and the Class Members to "a healthful environment."

229.    As a direct and proximate result of the above-mentioned acts of each Defendant, Plaintiffs have suffered injuries and damages and are expected to sustain future damages.  Buffalo's Residents are harmed by Defendants' decision, without material or adequate notice, to halt the fluoridation of Buffalo's water, because lack of access to fluoridated water harms dental health and overall health.

230.    As discussed in length throughout, the impact of Defendants' actions depriving Class Members of fluoridated water will be injuries

6087361v1 - 072141.0001

disproportionately suffered by people of color and low-income people in the community.

231.   The City of Buffalo is responsible for providing a healthy environment for its residents.

232.   As explained above, a healthful environment in a city like Buffalo includes fluoridated water.

233.   The Buffalo Water Board and the Buffalo Municipal Water Finance Authority were tasked with providing healthy water to Buffalo's residents.

234.   Veolia has entered a contractual agreement to assist the Buffalo Water Board in providing healthy water to Buffalo's residents.

235.   The City of Buffalo has acted jointly and/or in concert with the Buffalo Water Board, the Buffalo Municipal Water Finance Authority, Veolia, Defendant Brown, and Defendant McFoy to deprive Buffalo's Residents access to fluoridated water and have deprived Plaintiffs of their right under the Green Amendment to a healthful environment.

236.   The current and future liability of the Defendants arise each in part from their continued aggregate, cumulative actions and failures to provide access to fluoridated water to the people of Buffalo and their failure to provide meaningful notice of the cessation of fluoridated water in the City of Buffalo.

237.   Shockingly, as of this July 12, 2023 filing, the Defendants have not yet resumed fluoridation of Buffalo's water.  A story by Charlie Specht of The Buffalo News on January 17, 2023 first broke the news to members of the Buffalo community that the Defendants had ceased fluoridation of Buffalo's water in

6087361v1 - 072141.0001

49

June 2015. At that time, now nearly six months ago, Defendants (including Defendant Brown) and the Buffalo Common Council informed the public that they had been unaware that the fluoridation had ever stopped, and that they would take measures to see to it that fluoridation was resumed.

238. However, now, nearly six months later, the Defendants have not resumed the fluoridation. Nor have Defendants informed the people, with any modicum of specificity or certainty, when fluoridation will resume in Buffalo. There have been contradictory statements from Defendants reported in local media as to the purported timeline for fluoridation, but the community is still without any firm answers as to when (or if) the Defendants will actually resume fluoridating Buffalo's water.

239. As a result, the Defendants are each violating Plaintiffs' constitutionally protected rights of to "a healthful environment."

240. By reason of this constitutional violation, this Court should issue an injunction directing the immediate resumption of fluoridation of Buffalo's drinking water.

241. By reason of this constitutional violation, this Court should issue an injunction directing the Defendants to provide free preventative and treatment dental clinics to all Buffalo residents (and all other Buffalo residents since June 2015) who have experienced cavities and other diseases and complications preventable through public water fluoridation.

242. Additionally, because of this constitutional violation, the Court should issue compensatory and consequential damages in an amount to be

6087361v1 - 072141.0001

proved at trial as a result of the harm caused to Plaintiffs and Class Members as a result of Defendants' deprivation of fluoridated drinking water, with interest, costs, disbursements and attorney fees.

### THIRD CAUSE OF ACTION
### NEW YORK GENERAL BUSINESS LAW § 349
### Against All Defendants

243.    Plaintiffs hereby repeat and allege the foregoing paragraphs as if the same were fully set forth at length herein.

244.    Defendants' practice of selling and claiming Buffalo's water was fluoridated while simultaneously depriving Plaintiffs and Class Members of fluoridated water and failing to give meaningful notice of the star chamber decision to cease fluoridating Buffalo's water is a consumer-oriented act.

245.    The provision of non-fluoridated water impacts all customers of the Buffalo Water Board, Veolia, and the other Defendants.

246.    Defendants' conduct in a) stopping the provision of fluoridated water without the statutory required notice, or any adequate or reasonable notice, b) continuing to deprive Plaintiffs and Class Members of fluoridated drinking water without Plaintiffs and Class Members being informed that the water was unfluoridated, and c) falsely claiming that the water was fluoridated when it was not was, and is, misleading to consumers in a material way.

247.    Throughout the pattern of practice, and in written communications, Defendants, specifically Buffalo Water Board, Veolia, and Mr. McFoy, falsely indicated to Plaintiffs and Class Members that they were receiving fluoridated water.

248.   Defendant Buffalo Water Board has misrepresented and continues to misrepresent to Plaintiffs and Class Members that it "adds a low level of fluoride to drinking water in order to provide consumer dental health protection."

249.   In every annual report since 2015, often in large text with a unique color from the rest of the text in the report, and always on the first page of the report, Defendants have included either the sentence "[l]ast year, your tap water met all State drinking water standards" or "[l]ast year, your tap water met all State drinking water health standards."

250.   New York and NYSDOH has repeatedly reiterated that the State supports community water fluoridation "as a significant and cost effective public health measure."  New York has stated that CWF is "a safe and effective practice to help prevent and control tooth decay."  The highlighted claims in the annual reports suggest that Buffalo's water supply meets the standard of recommended and encouraged public health measures and practices emphasized by NYSDOH.

251.   Given the above representations, it was the reasonable understanding of Plaintiffs and Class Members that Defendants had not secretly deprived Buffalo's Residents of reliable fluoridated drinking water, critical to the healthful environment.

252.   The recent comments from civic leaders including Defendant Mayor Brown and leaders in the Buffalo Common Council and Buffalo School Board reflect that Buffalo's leaders were even unaware of the ongoing fluoride depravation.  Defendant Brown has admitted that the chosen notice mechanism would not work.

6087361v1 - 072141.0001

52

253. A municipality in New York which wishes to stop an ongoing provision of fluoridated water is required to follow the provisions of New York State Public Health Law Section 1100-A. This statute requires a municipality to provide, among other things, notice and a period for comment to the public, information about alternatives, and a proposed plan relating to the decision to halt fluoridation.

254. Defendants failed to take any such steps. In so failing, Defendants denied Buffalo residents the proper notice required to be afforded to a community when a municipality imparts on such a grave and harmful act.

255. Defendants thus deceived and misled Plaintiffs and Class Members in material ways.

256. As a result of Defendants' deceptive and misleading course of conduct, Plaintiffs and Class Members were denied the ability to challenge the intended course of action and were prevented from learning that they would need alternative options for fluoridation to substitute for community water fluoridation. Plaintiffs and Class Members have suffered actual damages because of Defendants' deceptive and misleading practices and communications.

257. Defendants' conduct violates New York General Business Law § 349(a) and is therefore subject to declaratory judgment, injunctive relief, and liable for compensatory and consequential damages to be proved at trial, with interest, costs, disbursements and attorney fees.

### FOURTH CAUSE OF ACTION
### PROMISSORY ESTOPPEL
**Against City of Buffalo, the Buffalo Water Board, and the Buffalo Municipal Water Finance Authority**

258.    Plaintiffs hereby repeat and allege the foregoing paragraphs as if the same were fully set forth at length.

259.    Plaintiffs and Class Members were and are in a legal relationship with the City of Buffalo, the Buffalo Water Board, and the Buffalo Municipal Water Finance Authority related to the sale and purchase of water.  Buffalo's Residents pay for the provision of water services (either directly, or indirectly through rent payments).  The City of Buffalo, the Buffalo Water Board, and the Buffalo Municipal Water Finance Authority are legally responsible for providing Buffalo's Residents with water.

260.    Defendants City of Buffalo and the Buffalo Water Board promised Plaintiffs and Class Members that they were receiving fluoridated drinking water through Buffalo's water system.

261.    Defendant Buffalo Water Board has misrepresented and continues to misrepresent to Plaintiffs and Class Members that it "adds a low level of fluoride to drinking water in order to provide consumer dental health protection."

262.    The reaction of Defendant Brown, the Common Council members, the Buffalo School Board members, and the public writ large reflects that a promise was made, both explicitly, through the water bills paid by Plaintiffs and Class Members, and circumstantially.

263.    In every annual report since 2015, often in large text with a unique color from the rest of the text in the report, and always on the first page of the

report, Defendants have included either the sentence "[l]ast year, your tap water met all State drinking water standards" or "[l]ast year, your tap water met all State drinking water health standards."

264.   New York and NYSDOH has repeatedly reiterated that the State supports community water fluoridation "as a significant and cost effective public health measure."  New York has stated that CWF is "a safe and effective practice to help prevent and control tooth decay."  The highlighted claims in the annual reports suggest that Buffalo's water supply meets the standard of commended and encouraged public health measures and practices emphasized by NYSDOH.

265.   Given these representations it was reasonable for the Plaintiffs and Class Members to believe that Defendants had not secretly deprived Buffalo's Residents of reliable fluoridated drinking water, critical to the healthful environment.

266.   A municipality in New York which wishes to stop an ongoing provision of fluoridated water is required to follow the provisions of New York State Public Health Law Section 1100-A.  This statute requires a municipality to provide, among other things, notice and a period for comment to the public, information about alternatives, and a proposed plan relating to the decision to halt fluoridation.  As Defendants did not take any of those steps, Plaintiffs and Class Members had not reason to believe that the fluoridation of Buffalo's water would be stopped.

267.   The city-wide uproar upon the unveiling that Buffalo's Residents are

being deprived fluoridated water reflects that the Plaintiffs and Class Members had reasonably relied on the promise that Defendants were continuing to fluoridate Buffalo's water. Buffalo's Residents had no reason to think they needed to seek alternative sources of fluoride because they relied on Buffalo's water supply to be fluoridated.

268.    The scientific studies are clear that individuals in communities without fluoridated water are significantly more likely to develop dental caries and cavities than those with fluoridated water. Plaintiffs' and Class Members' reliance on Defendants to provide fluoridated water was to their detriment.

269.    Defendants' conduct in breaking their promise to Plaintiffs and Class Members is unconscionable. The public statements by public leaders and health experts reflect the urgency of the situation caused by Defendants' conduct and the extent of damage that may have been caused (and may yet still be caused) by that conduct.

270.    Defendants' conduct violates the doctrine of promissory estoppel and is therefore subject to declaratory judgment, injunctive relief, and liable for compensatory and consequential damages in an amount to be proved at trial, with interest, costs, disbursements and attorney fees.

### FIFTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION
### Against City of Buffalo, the Buffalo Water Board, and the Buffalo Municipal Water Finance Authority

271.    Plaintiffs hereby repeat and allege the foregoing paragraphs as if the same were fully set forth at length.

272.    Plaintiffs and Class Members were and are in a legal relationship

with the City of Buffalo, the Buffalo Water Board, and the Buffalo Municipal Water Finance Authority related to the provision of water services. Buffalo's Residents pay for the provision of water services. The City of Buffalo, the Buffalo Water Board, and the Buffalo Municipal Water Finance Authority are legally responsible for providing Buffalo's Residents with water.

273.   The City of Buffalo and the Buffalo Water Board represented through their contracts with each Plaintiff and Class Member that they were receiving fluoridated drinking water through Buffalo's water system.

274.   Defendant Buffalo Water Board has represented and continues to represent to Plaintiffs and Class Members that it "adds a low level of fluoride to drinking water in order to provide consumer dental health protection."

275.   Plaintiffs and Class Members have not been receiving fluoridated water through Buffalo's water system since 2015.

276.   Defendants' continued representation that Buffalo's drinking water was fluoridated was not conveyed with reasonable grounds that it could be true.

277.   A municipality in New York which wishes to stop an ongoing provision of fluoridated water is required to follow the provisions of New York State Public Health Law Section 1100-A. This statute requires a municipality to provide, among other things, notice and a period for comment to the public, information about alternatives, and a proposed plan relating to the decision to halt fluoridation. As Defendants did not take any of those steps, Plaintiffs and Class Members had not reason to believe that the fluoridation of Buffalo's water would be stopped.

6087361v1 - 072141.0001

57

278.    The city-wide uproar upon the unveiling that Buffalo's Residents are being deprived fluoridated water reflects that the Plaintiffs and Class Members had relied on the promise that Defendants were continuing to fluoridate Buffalo's water. Buffalo's Residents had no reason to think they needed to seek alternative sources of fluoride because they relied on Buffalo's water supply to be fluoridated.

279.    The scientific studies are clear that individuals in communities without fluoridated water are significantly more likely to develop dental caries and cavities than those with fluoridated water. Plaintiffs' and Class Members' reliance on Defendants to provide fluoridated water was to their detriment.

280.    Defendants engaged in negligent misrepresentation and are therefore subject to declaratory judgment, injunctive relief, and liable for compensatory and consequential damages in an amount to be proved at trial, with interest, costs, disbursements and attorney fees.

### SIXTH CAUSE OF ACTION
### BREACH OF CONTRACT
### Against City of Buffalo, the Buffalo Water Board, and the Buffalo Municipal Water Finance Authority

281.    Plaintiffs hereby repeat and allege the foregoing paragraphs as if the same were fully set forth at length.

282.    Plaintiffs and Class Members were and are in a legal relationship with the City of Buffalo, the Buffalo Water Board, and the Buffalo Municipal Water Finance Authority related to the provision of water services. Buffalo's Residents pay for the provision of water services. The City of Buffalo, the Buffalo Water Board, and the Buffalo Municipal Water Finance Authority are legally

responsible for providing Buffalo's Residents with water.

283.    Defendant Buffalo Water Board has misrepresented and continues to misrepresent to Plaintiffs and Class Members that it "adds a low level of fluoride to drinking water in order to provide consumer dental health protection."

284.    The Plaintiffs and Class Members reasonably expected that the water sold to them by the City of Buffalo was properly fluoridated, but it was not in breach of the contracts between the Defendants and the Plaintiffs and Class Members.

285.    Plaintiffs and Class Members have performed under their respective contracts with Defendants by providing payment for Buffalo's water services.

286.    The City of Buffalo and the Buffalo Water Board represented through their contracts and inadequate disclosures with each Plaintiff and Class Member that they were receiving fluoridated drinking water through Buffalo's water system.

287.    Defendants have failed to perform.  Plaintiffs and Class Members have not been receiving fluoridated water through Buffalo's water system since 2015.

288.    Defendants have breached their contracts with Plaintiffs and Class Members and are therefore liable for compensatory and consequential damages in an amount to be proved at trial and should be enjoined as requested herein, with interest, costs, disbursements and attorney fees.

### SEVENTH CAUSE OF ACTION
### FRAUD
### Against All Defendants

289.    Plaintiffs hereby repeat and allege the foregoing paragraphs as if the same were fully set forth at length.

290.    Defendant Buffalo Water Board has misrepresented and continues to misrepresent to Plaintiffs and Class Members that it "adds a low level of fluoride to drinking water in order to provide consumer dental health protection."

291.    The Plaintiffs and Class Members reasonably expected that the water supplied by the Defendants was fluoridated.

292.    By their inadequate disclosures, and affirmative statements that Buffalo's water was being fluoridated, Defendants misrepresented to Plaintiffs and Class Members that they were receiving fluoridated drinking water through Buffalo's water system and omitted that Defendants had stopped the provision of fluoridated water to Plaintiffs and Class Members.  They did so with the intent to defraud Plaintiffs and Class Members.

293.    A municipality in New York which wishes to stop an ongoing provision of fluoridated water is required to follow the provisions of New York State Public Health Law Section 1100-A.  This statute requires a municipality to provide, among other things, notice and a period for comment to the public, information about alternatives, and a proposed plan relating to the decision to halt fluoridation.  As Defendants did not take any of those steps, Plaintiffs and Class Members reasonably relied on Defendants' misrepresentations and omissions.

294.    The city-wide uproar upon the unveiling that Buffalo's Residents are being deprived fluoridated water reflects that the Plaintiffs and Class Members had relied on the promise that Defendants were continuing to fluoridate Buffalo's water. Buffalo's Residents had no reason to think they needed to seek alternative sources of fluoride because they relied on Buffalo's water supply to be fluoridated.

295.    The scientific studies are clear that individuals in communities without fluoridated water are significantly more likely to develop dental caries and cavities than those with fluoridated water. Plaintiffs' and Class Members' reliance on Defendants to provide fluoridated water was to their detriment.

296.    Defendants' conduct was fraudulent, and they are therefore liable for compensatory and consequential damages in an amount to be proved at trial for the losses sustained by Plaintiffs and Class Members, with interest, costs, disbursements and attorney fees.

### *EIGHTH CAUSE OF ACTION*
### **BREACH OF EXPRESS WARRANTY**
### **Against All Defendants**

297.    Plaintiffs hereby repeat and allege the foregoing paragraphs as if the same were fully set forth at length.

298.    Pursuant to the contract alleged above, the Defendants provided an express warranty to Plaintiffs and the Class Members that the Buffalo water contained therapeutic levels of fluoride.

299.    Defendants breached that express warranty in that the Buffalo water did not, and does not, contain therapeutic levels of fluoride.

300.     As a result of Defendants' breach, Plaintiffs and the Class Members have been damaged in an amount to be proved at trial and for which the Defendants are liable with interest, costs, disbursements and attorney fees.

### NINTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTIES
### Against All Defendants

301.     Plaintiffs hereby repeat and allege the foregoing paragraphs as if the same were fully set forth at length.

302.     Pursuant to the contract alleged above, the Defendants provided implied warranties of merchantability and/or fitness for a particular purpose to Plaintiffs and the Class Members that the Buffalo water contained therapeutic levels of fluoride.

303.     Defendants breached the implied warranties in that the Buffalo water did not, and does not, contain therapeutic levels of fluoride.

304.     As a result of Defendants' breaches, Plaintiffs and the Class Members have been damaged in an amount to be proved at trial and for which the Defendants are liable with interest, costs, disbursements and attorney fees.

### TENTH CAUSE OF ACTION
### BREACH OF CONTRACT
### Against Veolia

305.     Plaintiffs hereby repeat and allege the foregoing paragraphs as if the same were fully set forth at length.

306.     Veolia entered a valid and binding contract with the Buffalo Water Board relating to the operation and management of Buffalo's water system.

307.     Plaintiffs and Class Members were, and are, third-party beneficiaries

6087361v1 - 072141.0001

to the contract between Veolia and the Buffalo Water Board.

308.    The Buffalo Water Board hired Veolia to provide healthful, reliable, and professional delivery of drinking water for Buffalo's Residents.

309.    The Buffalo Water Board paid Veolia for its services.

310.    Veolia breached the contract with the Buffalo Water Board by failing to provide healthful and reliable water with fluoride, as recommended by state, federal, and international health organizations and as reasonably expected by the Class Members.  Veolia also breached by failing to follow New York's statutory requirements for halting water fluoridation in a municipality and by failing, otherwise, to provide adequate or reasonable notice to Class Members.

311.    The scientific studies are clear that individuals in communities without fluoridated water are significantly more likely to develop dental caries and cavities than those with fluoridated water.  Plaintiffs' and Class Members' reliance on Defendants to provide fluoridated water was to their detriment.

312.    Veolia has breached its contracts with the Buffalo Water Board in a manner that injured Plaintiffs and Class Members as third-party beneficiaries. Veolia is therefore subject to injunctive relief and is also liable for compensatory and consequential damages in an amount to be proved at trial, with interest, costs, disbursements and attorney fees.

### *ELEVENTH CAUSE OF ACTION*
### NEGLIGENT MISPRESENTATION
### Against Veolia

313.    Plaintiffs hereby repeat and allege the foregoing paragraphs as if the same were fully set forth at length.

6087361v1 - 072141.0001

314. Veolia owes Plaintiffs and Class Members a duty. Buffalo's Residents pay for the provision of water services. Veolia is responsible for the operations and maintenance of Plaintiffs' and Class Members' contracts.

315. Veolia represented through the contracts with each Plaintiff and Class Member and through their claims that they would be providing healthful and reliable water services that Plaintiffs and Class Members were receiving fluoridated drinking water through Buffalo's water system.

316. Defendant Buffalo Water Board's website states that it is "managed by Veolia."

317. Defendant Buffalo Water Board and Veolia have represented and continue to represent to Plaintiffs and Class Members that it "adds a low level of fluoride to drinking water in order to provide consumer dental health protection."

318. Veolia breached its duty to Plaintiffs and Class Members.

319. Plaintiffs and Class Members have not been receiving fluoridated water through Buffalo's water system since 2015.

320. Veolia's continued representation that Buffalo's drinking water was fluoridated was not conveyed with reasonable belief that it could be true.

321. Veolia failed to provide adequate or reasonable notice to Plaintiffs and Class Members that they would be deprived of fluoridation of Buffalo's water supply.

322. The city-wide uproar upon the unveiling that Buffalo's Residents are being deprived fluoridated water reflects that the Plaintiffs and Class Members had relied on Veolia's promise that they were continuing to fluoridate Buffalo's

water.  Buffalo's Residents had no reason to think they needed to seek alternative sources of fluoride because they relied on Buffalo's water supply to be fluoridated.

323.    The scientific studies are clear that individuals in communities without fluoridated water are significantly more likely to develop dental caries and cavities than those with fluoridated water.  Plaintiffs' and Class Members' reliance on Veolia to provide fluoridated water was to their detriment.

324.    Veolia engaged in negligent misrepresentation and is therefore subject to declaratory judgment, injunctive relief, and liable for compensatory and consequential damages in an amount to be proved at trial, with interest, costs, disbursements and attorney fees.

### TWELFTH CAUSE OF ACTION
### NEGLIGENCE
### Against Veolia

325.    Plaintiffs hereby repeat and allege the foregoing paragraphs as if the same were fully set forth at length.

326.    Veolia owed a duty to Plaintiffs and Class Members.

327.    Veolia breach its duty to Plaintiffs and Class Members by failing to provide healthful and reliable water due to the water not being fluoridated. Veolia also breached its duty to Plaintiffs and Class Members by failing to notify Buffalo's Residents that they were not receiving fluoridated water through Buffalo's water system.

328.    Defendant Buffalo Water Board's website states that it is "managed by Veolia."

Case 1:23-cv-00814-JLS    Document 1-2    Filed 08/10/23    Page 71 of 80

329.    Defendant Buffalo Water Board and Veolia have represented and continue to represent to Plaintiffs and Class Members that it "adds a low level of fluoride to drinking water in order to provide consumer dental health protection."

330.    The city-wide uproar upon the unveiling that Buffalo's Residents are being deprived fluoridated water reflects that the Plaintiffs and Class Members had relied on Veolia's promise that they were continuing to fluoridate Buffalo's water.  Buffalo's Residents had no reason to think they needed to seek alternative sources of fluoride because they relied on Buffalo's water supply to be fluoridated.  Veolia's conduct resulted in Plaintiffs and Class Members having reduced access to fluoride which has been proven to result in increased dental health problems.

331.    Local health professionals have already reported a clear surge in dental health problems among Plaintiffs and Class Members, and the extent of those damages will continue to grow.

332.    Veolia was negligent and is therefore liable for compensatory and consequential damages in an amount to be proved at trial and should be enjoined as requested herein, with interest, costs, disbursements and attorney fees.

6087361v1 - 072141.0001

**WHEREFORE**, Plaintiffs respectfully request this Court award the following relief against all Defendants on all of the causes of action alleged above:

(1)    Certify this action as a class action;

(2)    Declare that Defendants have and are violating Plaintiffs' constitutional rights under Article I §19 of the New York State Constitution and New York State statutory and common law by depriving Buffalo residents of fluoridated drinking water;

(3)    Order the immediate resumption of fluoridation of Buffalo's drinking water;

(4)    Order the Defendants to provide free preventative and treatment dental clinics to all Buffalo residents (and all other Buffalo residents since June 2015) who have experienced cavities and other diseases and complications preventable through public water fluoridation;

(5)    Award actual damages and interest at the legal rate;

(6)    Award Plaintiffs' costs, reasonable attorney's fees, and disbursements pursuant to CPLR 909 and 8601; and

(7)    Award such other and further relief to which Plaintiffs and Class Members may be entitled as a matter of law or equity, or which the Court deems appropriate.

6087361v1 - 072141.0001

DATED:  Buffalo, New York
        July 12, 2023

LIPSITZ GREEN SCIME CAMBRIA LLP


By:___s/Robert M. Corp_____
        ROBERT M. CORP, ESQ.
        JOSEPH J. MANNA, ESQ.
Attorneys for Plaintiffs
Office and P.O. Address
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
(716) 849-1333
rcorp@lglaw.com

6087361v1 - 072141.0001

# Exhibit 3



**CT Corporation**
**Service of Process Notification**
07/21/2023
CT Log Number 544342820

## Service of Process Transmittal Summary

**TO:**    JESSIE BALLANTINE
Veolia North America
120 WATER ST STE 212
NORTH ANDOVER, MA 01845-2648

**RE:**    **Process Served in New York**

**FOR:**    Veolia Water North America-Northeast, LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | DANA Mc'WHITE and KENNETH McWHITE, ANTWANETT WILLIAMS, RAHWA GHIRMATZION, REBECCA WHIPPLE and NOLAN WHIPPLE, SUSAN GILLICK, FELICIA RICHARDSON and RICHARD RICHARDSON, And ABDUKADIR ABDULLAHI, on behalf of themselves and their representative minor children, and on behalf of a class of all persons similarly situated vs. CITY OF BUFFALO |
| **DOCUMENT(S) SERVED:** | Notice, Summons, Complaint |
| **COURT/AGENCY:** | Erie County Supreme Court, NY<br>Case # 8087372023 |
| **NATURE OF ACTION:** | Notice Of Commencement Of Action Subject To Mandatory Electronic Filing |
| **PROCESS SERVED ON:** | C T Corporation System, New York, NY |
| **DATE/METHOD OF SERVICE:** | By Process Server on 07/21/2023 at 14:34 |
| **JURISDICTION SERVED:** | New York |
| **APPEARANCE OR ANSWER DUE:** | Within 20 after the service, exclusive of the day of service |
| **ATTORNEY(S)/SENDER(S):** | Robert M. Corp<br>Lips= Green Scime Cambria Llp<br>42 Delaware Avenue, Suite 120<br>Buffalo, NY 14202<br>716-849-1333 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/21/2023, Expected Purge Date: 07/26/2023<br><br>Image SOP<br><br>Email Notification,  JESSIE BALLANTINE  jessie.ballantine@veolia.com<br><br>Email Notification,  Rhiannon Campbell  rhiannon.campbell@veolia.com<br><br>Email Notification,  James Terranova  james.terranova@veolia.com<br><br>Email Notification,  Deborah Roberts  deborah.roberts@veolia.com<br><br>Email Notification,  ADELA WEKSELBLATT  adela.wekselblatt@veolia.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>28 Liberty Street<br>New York, NY 10005 |



**CT Corporation**
**Service of Process Notification**
07/21/2023
CT Log Number 544342820

800-448-5350
MajorAccountTeam1@wolterskluwer.com

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                          Fri, Jul 21, 2023
**Server Name:**                   Brett bgolub

| Entity Served | VEOLIA WATER NORTH AMERICA-NORTHEAST, LLC |
|---|---|
| Case Number | 808737/2023 |
| Jurisdiction | NY |

| Inserts | | |
|---|---|---|
| | | |



STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

_____

ROBERT GALBRAITH and MELISSA MOSKO,
DANA McWHITE and KENNETH McWHITE,
ANTWANETT WILLIAMS,                                    Index No. **808737/2023**
RAHWA GHIRMATZION,
REBECCA WHIPPLE and NOLAN WHIPPLE,
SUSAN GILLICK,
FELICIA     RICHARDSON     and     RICHARD
RICHARDSON,
And ABDUKADIR ABDULLAHI,
on behalf of themselves and their representative
minor children, and on behalf of a class of
all persons similarly situated,

                          Plaintiffs,

v.

CITY OF BUFFALO,
BUFFALO WATER BOARD,
BUFFALO MUNICIPAL WATER
FINANCE AUTHROITY,
BYRON W. BROWN, in his official capacity
As Mayor of Buffalo,
OLUWOLE A. McFOY, in his official capacity
as Chairman of the Buffalo Water Board, and
VEOLIA NORTH AMERICA,

                  Defendants.

_____

### NOTICE OF COMMENCEMENT OF ACTION
### SUBJECT TO MANDATORY ELECTRONIC FILING

PLEASE TAKE NOTICE that the matter captioned above, which has been commenced by filing of the accompanying documents with the County Clerk, is subject to mandatory electronic filing pursuant to Section 202.5-bb of the Uniform Rules for the Trial Courts. This notice is being served as required by Subdivision (b)(3) of that Section.

The New York State Courts Electronic Filing System ("NYSCEF") is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and self-represented parties. Counsel and/or parties who do not notify the court of a claimed exemption (see below) as required by Section 202.5-bb(e) must immediately record their representation within the e-filed matter on the Consent page in NYSCEF. Failure to do so may result in an inability to receive electronic notice of document filings.

Exemptions from mandatory e-filing are limited to: 1) attorneys who certify in good faith that they lack the computer equipment and (along with all employees) the requisite knowledge to comply; and 2) self-represented parties who choose not to participate in e-filing.  For additional information about electronic filing, including access to Section 202.5-bb, consult the NYSCEF website at www.nycourts.gov/efile, or contact the NYSCEF Resource Center at 646-386-3033 or efile@courts.state.ny.us.

Dated: July 19, 2023                            LIPSITZ GREEN SCIME CAMBRIA LLP

                                                By:_____
                                                    ROBERT M. CORP, ESQ.
                                                42 Delaware Avenue, Suite 120
                                                Buffalo, New York 14202
                                                (716) 849-1333 ext. 314
                                                (716) 855-1580
                                                rcorp@lglaw.com

TO:

CITY OF BUFFALO,
65 Niagara Square
Buffalo, New York 14202

BUFFALO WATER BOARD,
Department of Public Works, Parks, and Streets
502 City Hall
Buffalo, New York 14202

BUFFALO MUNICIPAL WATER
FINANCE AUTHORITY,
502 City Hall
Buffalo, New York 14202

BYRON W. BROWN, in his official capacity
As Mayor of Buffalo,
65 Niagara Square
Buffalo, New York 14202

OLUWOLE A. McFOY, in his official capacity
As Chairman of the Buffalo Water Board,
Department of Public Works, Parks, and Streets
502 City Hall
Buffalo, New York 14202

6094242v1 - 072141.0001

VEOLIA WATER NORTH AMERICA-
NORTHEAST, LLC,
C T Corporation System
28 Liberty Street
New York, New York 10005

VEOLIA NORTH AMERICA, LLC
461 From Road
Suite 400
Paramus, New Jersey 07652