UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



---

ROBERT GALBRAITH and MELISSA
MOSKO, DANA McWHITE and
KENNETH McWHITE, ANTWANETT
WILLIAMS, RAHWA GHIRMATZION,
REBECCA WHIPPLE and NOLAN
WHIPPLE, SUSAN GILLICK,
FELICIA RICHARDSON and
RICHARD RICHARDSON, and
ABDUKADIR ABUDLLAHI, on behalf
of themselves and their respective
minor children, and on behalf of a class
of all persons similarly situated,

      Plaintiffs,

   v.

CITY OF BUFFALO,
BUFFALO WATER BOARD,
BUFFALO MUNICIPAL WATER
FINANCE AUTHORITY, BYRON W.
BROWN, in his official capacity as
Mayor of Buffalo, OLUWOLE A.
McFOY, in his official capacity as
Chairman of the Buffalo Water Board,
VEOLIA WATER NORTH AMERICA-
NORTHEAST, LLC, and VEOLIA
NORTH AMERICA, LLC,

      Defendants.

23-CV-814 (JLS)

---

## DECISION AND ORDER

    Plaintiffs filed this putative class action in Supreme Court, Erie County to

vindicate rights allegedly violated when Defendants stopped fluoridating Buffalo's

drinking water.  The question here is whether this action—removed to this Court

under the Class Action Fairness Act ("CAFA")—should be remanded to state court. Because the out-of-state Veolia Defendants are "primary defendants," and because an earlier "other" putative class action was "filed," CAFA requires this Court to deny Plaintiffs' remand motion.

## BACKGROUND

**I.     The *Abdullahi* and *Galbraith* Complaints**

In January 2023, Buffalo residents Abdukadir Abdullahi, Melissa Mosko, and Robert Galbraith filed a putative class action in New York state court against Veolia North America, the City of Buffalo, the Buffalo Water Board, Buffalo Mayor Byron Brown, and Buffalo Water Board Chairman Oluwole McFoy. *See* Dkt. 22-4 ("*Abdullahi* complaint"). The primary allegations in that complaint centered around Defendants' failure to fluoridate Buffalo's drinking water. *Id.* In total, the *Abdullahi* complaint listed twelve causes of action. *Id.* The complaint remained pending for approximately one year, until Plaintiffs voluntarily discontinued it in January 2024. Dkt. 23-2.[1]

About six months after filing the *Abdullahi* complaint—and while the *Abdullahi* complaint remained pending—Abdullahi, Mosko, and Galbraith filed a new putative class action in state court with virtually identical claims. *See* Dkt. 1-2 ("*Galbraith* complaint"). This complaint, which is the one before this Court, also

---

[1] The first time the *Abdullahi* complaint was referenced in these proceedings was in the Veolia Defendants' opposition brief. *See* Dkt. 22-4 (the *Abdullahi* complaint). Indeed, Plaintiffs' motion to remand does not make any reference to the *Abdullahi* complaint.

centers around Defendants' failure to fluoridate Buffalo's drinking water. *Id.* This second iteration included nine additional Buffalo resident plaintiffs: Dana McWhite, Kenneth McWhite, Antwanett Williams, Rahwa Ghirmatzion, Rebecca Whipple, Nolan Whipple, Susan Gillick, Felicia Richardson, and Richard Richardson. The *Galbraith* complaint also included two additional defendants: the Buffalo Municipal Water Finance Authority and Veolia Water North America–Northeast. *Id.*

The City of Buffalo, the Buffalo Water Board, the Buffalo Municipal Water Authority, Mayor Byron Brown, and Chairman Oluwole McFoy (the "Buffalo Defendants") are all New York citizens. Dkt. 1-2, ¶¶ 30–43. Veolia Water North America, LLC and Veolia Water North America-Northeast, LLC (the "Veolia Defendants") are not New York citizens. Rather, they are incorporated in Delaware with their principal place of business in Massachusetts. *See* Dkt. 1, ¶ 11; *see also* Dkt. 1-2, at 44 (the Veolia Defendants "were and still are foreign corporation[s] authorized to do business within the State of New York").

The *Abdullahi* and *Galbraith* complaints are near duplicates. Each asserts the same twelve causes of action. Indeed, most of the factual allegations are identical. Each complaint alleges that Defendants stopped fluoridating Buffalo's drinking water, made inaccurate representations about fluoride in the water, and did not provide sufficient notice about halting fluoridation. Further, each complaint shares the same purported class of Buffalo residents.

In the instant case, the Veolia Defendants timely filed a notice of removal, pursuant to CAFA. Dkt. 1. Plaintiffs moved for remand, citing four CAFA

exceptions. *See* Dkt. 18-1, at 8. After the Veolia Defendants filed their opposition brief, Dkt. 22, but before Plaintiffs filed their reply brief, Dkt. 23, the *Abdullahi* complaint was voluntarily discontinued (nearly a year after it was initially filed). On February 1, 2024, this Court held oral argument on Plaintiffs' motion to remand. Dkt. 24.

## II.    The Class Action Fairness Act

Congress enacted CAFA to expand federal jurisdiction, by permitting "a defendant to remove a class action or mass action to federal court, notwithstanding the absence of the complete diversity or federal question typically required for removal." *Krasner v. Cedar Realty Trust, Inc.*, 86 F.4th 522, 526 (2d Cir. 2023). CAFA grants federal courts "jurisdiction over only those class actions involving 100 or more class members, an aggregate amount in controversy greater than $5,000,000, and minimal diversity, *i.e.*, where at least one plaintiff and one defendant are citizens of different states." *See id.* (citing 28 U.S.C. §§ 1332(d)(2), 1332(d)(5) and *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006)). While broadening federal courts' authority to hear class actions, CAFA simultaneously carved out exceptions to that authority, *see Krasner*, 86 F.4th at 526, which will be discussed below as relevant here.

Class actions removed under CAFA may be remanded to originating state courts under the general remand statute. *See* 28 U.S.C. § 1453(c)(1) (28 U.S.C. section 1447 "shall apply to any removal of a case under this section"); *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23,

4

26 (2d Cir. 2010). And "[t]he party opposing remand generally bears the burden of showing that federal jurisdiction is proper." *Id.* (citing *Blockbuster, Inc.*, 472 F.3d at 57–58). Once the general requirements of CAFA jurisdiction are established, plaintiffs have the burden of demonstrating that remand is warranted based on one of CAFA's enumerated exceptions. *See id.*; *see also Brook v. UnitedHealth Group Inc.*, No. 06 Civ. 12954(GBD), 2007 WL 2827808, at *3 (S.D.N.Y. Sept. 27, 2007); *accord Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021–22 (9th Cir. 2007); *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 679–80 (7th Cir. 2006); *Frazier v. Pioneer Ams. LLC*, 455 F.3d 542, 546 (5th Cir. 2006).

### III.   Plaintiffs' Motion to Remand

Plaintiffs raise four CAFA exceptions: the local-controversy exception, the home-state exception, the governmental entity exception, and the discretionary "interests-of-justice" exception. They are discussed here.

First, the local-controversy exception provides:

A district court *shall decline to exercise jurisdiction* under paragraph (2)--
    **(A)(i)** over a class action in which--
        **(I)** greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
        **(II)** at least 1 defendant is a defendant--
            **(aa)** from whom significant relief is sought by members of the plaintiff class;
            **(bb)** whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
            **(cc)** who is a citizen of the State in which the action was originally filed; and
        **(III)** principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in

> the State in which the action was originally filed; *and*
> **(ii)** during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

28 U.S.C. § 1332(d)(4)(A) (emphasis added).

Plaintiffs highlight that greater than two-thirds of the proposed class consists of New York citizens. Dkt. 18-1, at 14. Plaintiffs also note that several of the Defendants from which Plaintiffs seek relief are New York citizens. *Id.* at 8. Additionally, the conduct of the New York defendants forms a significant basis for Plaintiffs' claims, and the principal injuries occurred in New York. *Id.* at 8, 21. Plaintiffs also informed the Court that no other class action had been filed against Defendants asserting similar allegations in the three years preceding the *Galbraith* complaint. *Id.* at 8, 23. In their reply brief, Plaintiffs clarify that their position is that the *Abdullahi* complaint is the "same action" as the *Galbraith* complaint and, accordingly, does not impact this exception's applicability. Dkt. 23, at 4.

Next, the home-state exception provides that a "court *shall* decline to exercise [CAFA jurisdiction] . . . [when] two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the *primary* defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B) (emphasis added). Because Plaintiffs maintain that two-thirds of the proposed class consists of New York citizens, and that the primary defendants—the Buffalo Defendants—are citizens of New York, Plaintiffs believe this Court must remand the matter to state court. Dkt. 18-1, at 26.

Additionally, Plaintiffs suggest the governmental entity exception requires remand because the primary defendants are "governmental entities against whom the district court may be foreclosed from ordering relief." *Id.* The governmental entity exception to CAFA requires a federal court to remand when "*the primary defendants* are States, State Officials, or other governmental entities against whom the district court may be foreclosed from ordering relief[.]" 28 U.S.C. § 1332(d)(5)(A) (emphasis added); *see also Frazier*, 455 F.3d at 546 ("The plain text of § 1332(d)(5)(A), using the definite article before the plural nouns, requires that all primary defendants be states.").

Lastly, Plaintiffs urge remand under the discretionary "interests-of-justice" exception, because "this case is truly local in nature." Dkt. 18-1, at 27 (citing 28 U.S.C. § 1332(d)(3)). The discretionary exception instructs that courts "*may*, in the *interests of justice* and looking at the totality of the circumstances, *decline to exercise jurisdiction* . . . over a class action where greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the *primary defendants are citizens of the state in which the class action was originally filed.*" 28 U.S.C. § 1332(d)(3) (emphasis added). The statute outlines six factors a court should consider when invoking this discretionary exception, including whether, "during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed." *Id.* § 1332(d)(3)(F).

## ANALYSIS

The *Galbraith* complaint in this case meets CAFA's numerosity, amount-in-controversy, and minimal diversity requirements. Therefore, the only issue to decide is whether any of the CAFA exceptions advanced by Plaintiffs requires remand.

As explained further below, the plain meaning of CAFA's text reveals two fatal obstacles to remand. First, the Veolia Defendants are "primary defendants"—and that bars the home-state exception, the governmental entity exception, and the discretionary "interests-of-justice" exception. Second, the "other" prior putative class action—the *Abdullahi* complaint—bars CAFA's local-controversy exception. These two obstacles resolve Plaintiffs' motion and require this Court to retain jurisdiction.[2]

## I.   CAFA's Clear and Unambiguous Text is Dispositive

The statutory text that governs here is clear and dispositive. In *BP p.l.c v. Mayor of Baltimore*, the Supreme Court reiterated that courts are to discern and apply the "ordinary meaning" of statutory terms. 593 U.S. 230, ___, 141 S. Ct. 1532, 1537 (2021). Courts have "no license to give statutory exemptions anything but a fair reading." *Id.* at 1538 (internal citations and quotations omitted). The Supreme Court reasoned that "[e]xceptions and exemptions are no less part of Congress's work than its rules and standards—and all are worthy of a court's respect." *Id.* at

---

[2] Because of these conclusions, the Court need not explore any further reasons against remand advanced by the Veolia Defendants.

1539.  Indeed, "[t]hat a law might temper its pursuit of one goal by accommodating others can come as no surprise.  Often legislation becomes possible only because of such compromises."  *Id.*  Lawmakers frequently "tread in areas fraught with competing social demands where everyone agrees trade-offs are required.  Whatever the reason for a legislative compromise, [courts] have no right to place [their] thumbs on one side of the scale or the other."  *Id.* (internal citation omitted).

Instead, courts should focus on the language Congress employed.  *Id.* "'[E]ven the most formidable' policy arguments cannot 'overcome' a clear statutory directive."  *Id.* at 1542 (quoting *Kloeckner v. Solis*, 568 U.S. 41, 56 n.4 (2012)).  A court's task "is to discern and apply the law's plain meaning as faithfully as [it] can, not 'to assess the consequences of each approach and adopt the one that produces the least mischief.'"  *Id.* (quoting *Lewis v. Chicago*, 560 U.S. 205, 217 (2010)).  To the extent that experience "may prove these other measures insufficient, Congress is of course free to revise its work anytime.  But that forum, not this one, is the proper place for such lawmaking."  *Id.* at 1543.

In sum, "[t]he words of a governing text are of paramount concern and what they convey, in their context, is what the text means."  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012).  "Words are to be understood in their ordinary, everyday meanings—unless the context indicates that they bear a technical sense."  *Id.* at 69.  And the "spirit of a statute [should not] prevail over its letter."  *Id.* at 343.  These basic principles apply fully here.

9

II.     **The Veolia Defendants are "Primary Defendants"**

Three of Plaintiffs' grounds for remand (the home-state, governmental entity, and interests-of-justice exceptions) fail because the out-of-state Veolia Defendants—non-New York citizens—are "primary defendants."

A.     **Courts Apply the Plain Meaning of "Primary Defendant"**

Congress "left the term [primary defendant] undefined in CAFA." *Sudholt v. Country Mutual Ins. Co.*, 83 F.4th 621, 628 (7th Cir. 2023). The Second Circuit has not addressed this issue. The Seventh Circuit observed "that the plain import of 'primary defendant' requires identifying the 'gravamen of the complaint.'" *Id.* (quoting *Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 585 (7th Cir. 2017)). The *Sudholt* court noted that the "controlling inquiry" required "an assessment of the plaintiff's complaint as a whole—its factual allegations, claims, and requests for relief—with an eye toward examining whether the defendant in question is a principal focus of the class action." *Id.*

The Eleventh Circuit's discussion of the meaning of "primary defendant" under CAFA also bears consideration. *See Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1162 (11th Cir. 2021) (citing *Hunter v. City of Montgomery, Alabama*, 859 F.3d 1329 (11th Cir. 2017)). That Court recognized that, in order to decide whether a defendant is a "primary defendant," a court must ask "whether, given the claims asserted against the defendant, [the defendant] has potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants if found liable." *Hunter*, 859 F.3d at 1336 (citing *Vodenichar v.*

10

*Halcon Energy Props., Inc.*, 733 F.3d 497, 505–06 (3d Cir. 2013)); *see also Smith*, 991 F.3d at 1162.

Further, the Third Circuit has construed the word "primary" to mean "principal," "fundamental," or "direct." *Vodenichar*, 733 F.3d at 504 (citing *Merriam-Webster's Collegiate Dictionary* 923 (10th ed. 2002)). The *Vodenichar* court reasoned that, "courts tasked with determining whether a defendant is [a] 'primary defendant' under CAFA should assume liability will be found and determine whether the defendant is the 'real target' of the plaintiffs' accusations." *Id.* at 505. Courts should also determine "if the plaintiffs seek to hold the defendant responsible for its own actions, as opposed to seeking to have it pay for the actions of others. Also, courts should ask whether, given the claims asserted against the defendant, it has potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants if found liable." *Id.* at 505–06.[3]

Plaintiffs posit that a primary defendant is a party who: (1) has the greater

---

[3] This Court has also considered the meaning of "primary defendant." *See Green v. Sheraton, LLC*, No. 22-cv-46-JLS-JJM, 2022 WL 4072475, at *2 (W.D.N.Y. Jun. 9, 2022) (reviewing "primary defendant" under CAFA) *accepted and adopted* No. 22-CV-46 (JLS) (JJM), 2022 WL 4019320, *1 (W.D.N.Y. Sept. 1, 2022) (Sinatra, J.). "Primary defendants" are most often defined as "those parties that are allegedly directly liable to the plaintiffs, while 'secondary' defendants are usually those parties sued under theories of vicarious liability or joined for purposes of contribution or indemnification[.]" *Green*, 2022 WL 4072475, at *2. Primary defendants are those parties "having a dominant relation to the subject matter of the controversy, in contrast to other defendants who played a secondary role by merely assisting in the alleged wrongdoing, or who are only vicariously liable." *Id.* (citing *McCracken v. Verisma Systems, Inc.*, No. 6:14-cv-06248(MAT), 2017 WL 2080279, at *3 (W.D.N.Y. May 15, 2017)).

liability exposure; (2) is the most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously, or for indemnification or contribution; (4) is the subject of a significant portion of the claims asserted by plaintiffs; or (5) is the only defendant named in one particular cause of action. Dkt. 18-1, at 24 (citing *Sorrentino v. ASN Roosevelt Ctr., LLC*, 588 F. Supp. 2d 350, 358 (E.D.N.Y. 2008)). The Veolia Defendants agree that Plaintiffs' definitions are appropriate, and any one of the definitions is sufficient to "confer primary defendant status." Dkt. 22, at 28–29.

### B.   The Veolia Defendants Fall Squarely Within These Definitions of "Primary Defendant"

In Plaintiffs' view, the Veolia Defendants are not primary defendants because they are not the "real targets" of the lawsuit. Dkt. 23, at 15. Accordingly, the Veolia Defendants played a "secondary role," and the Buffalo Defendants "would be expected to incur most of the loss if liability is found." *Id.*  Plaintiffs argue that the allegations against the Veolia Defendants are contingent upon threshold findings related to the Buffalo Defendants and that the Veolia Defendants are private parties that contracted with the Buffalo Defendants. *See id.*  According to Plaintiffs, characterizing the Veolia Defendants as primary under a broader interpretation is "inconsistent with this ordinary meaning and with CAFA's distinct treatment of primary defendants." *Id.* (citing *Singh v. American Honda Finance Corp.*, 925 F.3d 1053, 1068 (9th Cir. 2019) (defining "primary defendant" as the "principal," "fundamental," or "direct" defendant)).

To further emphasize the Buffalo Defendants' "primary" role, Plaintiffs

highlight public correspondence to the Buffalo Defendants, as well as local news coverage of the allegations. *See* Dkt. 23, at 16. Specifically, Plaintiffs note that the communications and coverage primarily question the Buffalo Defendants' actions, rather than those of the Veolia Defendants. *See* Dkt. 23-14 (Press Release, Buffalo Water, Buffalo Water Receives Approval by New York State Department of Health to Restore Fluoride to City of Buffalo); Dkt. 23-15 (Charlie Specht, *Deja vu in City Hall: One year later, still no fluoride in Buffalo's Water*, BUFFALO NEWS (Jan. 5, 2024), https://buffalonews.com/news/local/government-politics/deja-vu-in-city-hall-one-year-later-still-no-fluoride-in-buffalos-water/article_de966298-ab17-11ee-b369-2b4f2c325210.html); Dkt. 23-16 (Commc'n from the City of Buffalo Common Council to Oluwole McFoy, Chairperson of the Buffalo Waterboard (Jan. 3, 2024)).

But the plain meaning of "primary defendants," as used in CAFA, applies to the Veolia Defendants here. Plaintiffs' argument that the Buffalo Defendants are "primary defendants" does not single-handedly relegate the Veolia Defendants to "secondary defendant" status. In particular, Plaintiffs assert nine causes of action against the Veolia Defendants. *See* Dkt. 1-2. Of these nine causes of action, three are solely against the Veolia Defendants. *Id.* ¶¶ 305–12 (breach of contract against the Veolia Defendants), 313–24 (negligent misrepresentation against the Veolia Defendants), 325–32 (negligence against the Veolia Defendants). Plaintiffs seek to recover injunctive relief, damages, and attorneys' fees directly from the Veolia Defendants, based on claims solely against Veolia. *Id.* ¶¶ 10, 312, 324, 332.

Indeed, the Veolia Defendants are a "principal focus of the class action." *See*

*Sudholt*, 83 F.4th at 629.  They also face "potential exposure to a significant portion of the class and would sustain a substantial loss as compared to other defendants if found liable."  *See Hunter*, 859 F.3d at 1336 (internal quotations and citations omitted).  And the complaint discernibly places the Veolia Defendants as "direct" and "real targets" of Plaintiffs' allegations.  *See Vodenichar*, 733 F.3d at 505.

Plaintiffs cannot overcome their own definitions or those outlined by the caselaw cited above.  By any of these measures, the Veolia Defendants are "primary defendants."  Because the Veolia Defendants are primary defendants and are not New York citizens, the home-state, governmental entity, and interests-of-justice exceptions are inapplicable.

### III.   The *Abdullahi* Complaint was an "Other Class Action" that was "Filed"

Plaintiffs' remaining ground for remand—the local-controversy exception— fails because the *Abdullahi* complaint was another class action that was filed less than three years before the *Galbraith* complaint.

### A.   Courts Apply the Plain Meaning of the Local-Controversy Exception

CAFA's local-controversy exception provides that a federal court "shall decline" jurisdiction where: (1) more than two-thirds of the class members are citizens of the state where the action is filed; (2) plaintiffs seek "significant relief" from at least one local defendant who is a citizen of the state and whose alleged conduct forms a "significant basis" for the claims asserted; (3) the "principal injuries" were incurred in the state; and (4) no other class action "has been filed

asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons" in the three years prior. *See* 28 U.S.C. § 1332(d)(4)(A).[4]  The final requirement is dispositive here.

In *Dutcher v. Matheson*, the Tenth Circuit conducted a plain meaning review of CAFA's use of "filed" within the local-controversy exception's context. 840 F.3d 1183, 1193 (10th Cir. 2016). The *Dutcher* plaintiffs argued that the local-controversy exception's "no other class action" requirement does not contemplate putative class actions where the class was not certified. *Id.* at 1192. The Tenth Circuit disagreed. *Id.* at 1193. Because "the statute speaks of a case 'filed' as a class action, [the court thought] the relevant temporal point to determine whether a case is a class action is when the complaint seeking class-wide relief is filed, rather than when the court makes a decision regarding class certification." *Id.* The court noted that the statute "does not address whether any class action was certified[.]" *Id.*

In *Levine v. Entrust Group*, the Northern District of California analyzed the prohibition against a previously "filed" class action. No. C 12-03959 WHA, 2013 WL 1120695, at *4 (N.D. Cal. Mar. 18, 2013). The court observed that, although the

---

[4] One court applying this very provision observed that CAFA was the product of years of debate in Congress, resulting in "a complex and fragile balance of compromises." *Schutte v. Ciox Health, LLC*, 28 F.4th 850, 858 (7th Cir. 2022). The *Schutte* court also noted that "[c]ompromises draw unprincipled lines between situations that strike an outside observer as all but identical. The limitation is part of the price of the victory achieved, a concession to opponents who might have been able to delay or block a bill even slightly more favorable to the proponents." *Id.* (internal quotations omitted). As such, like other statutory text, CAFA should be enforced "as written." *Id.* at 863.

action before the court was "local in nature, it [was] repetitive in the very abusive sense that was of concern to Congress.  That is, the same lawsuit has been filed and re-filed in order to find a favorable courtroom." *Id.*  Although service was not effectuated in the previous class action, the court highlighted Congress's use of the word "filed," and exclusion of the word "served," within the local-controversy exception. *Id.* at *5.  Accordingly, filing a lawsuit without service still constitutes "filed" within the meaning of CAFA's plain text. *Id.*

This case is like *Davenport*, where residents from Flint, Michigan brought a putative class action in state court stemming from the Flint public water system crisis. *Davenport v. Lockwood, Andrews & Newnam, Inc.*, 854 F.3d 905, 907 (6th Cir. 2017).  In *Davenport*, the district court invoked the local-controversy exception and remanded a putative class action to state court, despite acknowledging that other class actions had been filed in the previous three years. *Id.* at 908.  The Sixth Circuit reversed. *Id.* at 911.

The Sixth Circuit's reasoning is instructive. *Id.*  In that case, it was undisputed that, before the *Davenport* plaintiffs filed their action, "Flint residents filed other class actions against Veolia, LAN, and various other persons and entities seeking damages for injuries allegedly caused by the lead contamination in Flint's water system." *Id.* at 908.  There was also no dispute that those other class actions "involve[d] similar factual allegations against many of the same defendants as those" present in the class action before the court. *Id.* at 909.

To determine whether those "other class actions" were fatal, the court looked

16

to the "statutory language as the starting point for interpretation and . . . the ending point if the plain meaning of that language is clear." *Id.* (internal citations and quotations omitted).  The court decided that the "plain language of CAFA offer[ed] a simple answer to [its] inquiry.  The local controversy exception will apply only if no other similar class action was brought against any of the defendants in the instant action during the three years preceding the filing of this case." *Id.* (citing 28 U.S.C. § 1332(d)(4)(A)(ii)).  As such, based on the "clear and unambiguous" statutory language, CAFA's local-controversy exception did not apply.[5] *Id.*

## B.  Plaintiffs' Policy Arguments Fail As Well

Plaintiffs' arguments in support of the local-controversy exception cannot defeat CAFA's clear and unambiguous text.  So they ask this Court to rely, instead, on policy arguments based on their view of congressional intent.

First, Plaintiffs argue that this complaint is the same "action" as the

---

[5] To the extent that the *Davenport* district court and plaintiffs also secondarily relied on policy considerations in lieu of a plain meaning reading of the text, the Sixth Circuit noted that the "policy implications behind CAFA do not require that we remand this case to state court." *Id.* at 910.  The court accepted the premise that Congress's intent was to eliminate copycat, or near copycat, suits in multiple forums. *Id.*  But there were also policy goals behind CAFA that support the plain-language reading of the statute because it was enacted to broaden the availability of diversity-jurisdiction for class-action lawsuits. *Id.*; *see also* S. REP. NO. 109-14, at 35 (2005) *as reprinted in* 2005 U.S.C.C.A.N. 3, 34 ("[T]he overall intent of [CAFA] is to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications.").  Indeed, Congress was concerned about what "appear[ed] to be state court provincialism against out-of-state defendants" and the need "to shore up confidence in the judicial system by preventing even the appearance of discrimination in favor of local residents." *Davenport*, 854 F.3d at 910 (referring to portions of S. REP. NO. 109-14).

*Abdullahi* complaint, so the exception's final prong should not apply. To interpret "other class action," Plaintiffs resort to their views of CAFA's overarching goals. Dkt. 23, at 2. As Plaintiffs would have it, the *Abdullahi* complaint is not an "other class action" because the relevant inquiry is "whether similar factual allegations have been made against the defendants in multiple class actions—and hence they are facing separate distinct lawsuits." *Id.* at 3 (citing *Vodenichar*, 733 F.3d at 509).

Plaintiffs cite *Vodenichar*, where the Third Circuit determined that "Congress wanted to ensure that defendants did not face copycat, or near copycat, suits in multiple forums and hence excluded from the local controversy exception cases where a defendant was named in multiple similar cases." *Vodenichar*, 733 F.3d at 508. Based on this, Plaintiffs argue that Defendants do not face the risk of "copycat, or near copycat, suits in multiple forums[.]" Dkt. 23, at 3. Plaintiffs expand on their policy argument by asking this Court to "interpret the language in a way that is consistent with the clear intent of CAFA[,]" and contending that denial of their remand motion would be "plainly contradictory to Congress's intent in drafting the Local Controversy Exception to CAFA." *Id.* at 7.

But it is not this Court's place to override the clear text Congress enacted in CAFA. Rather, the Court's inquiry must start and end with the plain meaning of CAFA's clear and unambiguous text. The *Abdullahi* complaint is an "other class action."

Plaintiffs similarly argue that the *Abdullahi* complaint is the same action as the *Galbraith* complaint because the *Abdullahi* complaint was never served.

*Dutcher* and *Levine* undercut that argument.  In *Dutcher*, the plaintiffs argued that a previous lawsuit was not a "class action" because the class was not certified.  *See Dutcher*, 840 F.3d at 1192.  The Tenth Circuit was unmoved, looking to CAFA's specific use of "filed."  *Id.* at 1193.  The previous complaint in *Dutcher* was "filed" as a class action, so it was irrelevant that the class was never certified because CAFA did not address "whether any class action was certified over [the three year] time frame[.]"  *Id.*

And in *Levine*, the plaintiffs previously filed "almost identical putative class actions" to the class action before the district court.  *Levine*, 2013 WL 1126095, at *4.  Those previous class actions were filed, then voluntarily dismissed without service.  *Id.*  The district court acknowledged that "service was not effectuated in the earlier cases."  *Id.* at *5.  But Congress used the word "filed" when it enacted CAFA's local-controversy exception.  *Id.*  Therefore, the *Levine* court determined "[f]iled without service still constitutes filed."  *Id.*[6]

CAFA's local-controversy exception does not make any reference to "service." And when the *Abdullahi* complaint was filed, it was an "other class action" as described in CAFA.  Further, it makes no difference that the *Abdullahi* complaint was voluntarily discontinued nearly one year after being filed.

---

[6] Plaintiffs argue *Levine* is not relevant because plaintiffs' counsel in that matter admitted to forum shopping. Dkt. 23, at 6 (citing *Levine*, 2013 WL 1120695, at *4). The *Levine* court accounted for this admission. *Levine*, 2013 WL 1120695, at *4. But the court also emphasized that the lack of service of the previous class action complaints did not alter its view that the local-controversy exception was inapplicable. *Id.* at *5. Specifically, the court noted Congress used the word "filed" and not the word "served." *Id.*

Notably, Congress did address the differences between "filing" and "service" nearby in CAFA. *See* 28 U.S.C. § 1332(d)(7). In subsection 1332(d)(7), Congress outlined that citizenship for members of the proposed class "shall be determined . . . as of the *date of filing* of the complaint or amended complaint, or, if the . . . [initial pleading] is not subject to Federal Jurisdiction, as of the *date of service* by plaintiffs of an amended pleading, motion, or other paper, indicated the existence of federal jurisdiction." *Id.* (emphasis added). Filing and service mean different things.

Plaintiffs rely on *Vodenichar*, where the procedural posture was distinct from that here because the district court was involved in the transition from the first case to the second case. *Vodenichar*, 733 F.3d at 509. In particular, during the first filed action in *Vodenichar*, the parties collaborated to allow one another to assert claims against "local defendants in a single forum[.]" *Id.* The district court granted the plaintiffs' motion to dismiss the first complaint without prejudice—but conditioned this on the parties' participation "in ADR and to retain the discovery that they had exchanged" to facilitate the ADR process and the second filed action. *Id.* The Third Circuit determined the district court's actions "showed that it considered the second filed action a continuation of the first filed action and took practical steps to ensure that the act of filing the second complaint did not delay the parties' ability to proceed." *Id.* No similar judicial involvement occurred here.

Plaintiffs cite two other cases—*Kendrick* and *Bridewell-Sledge*—which are also distinguishable. The trial courts in each of those cases effectively consolidated the old and new cases. *See Kendrick v. Conduent State & Local Sols., Inc.*, 910 F.3d

1255, 1260–61 (9th Cir. 2018); *Bridewell-Sledge v. Blue Cross*, 798 F.3d 923, 924, 930 (9th Cir. 2018).  Again, there was no consolidation in this case.  The *Abdullahi* complaint was filed and remained inactive until it was voluntarily dismissed long *after* the *Galbraith* complaint was filed.  Neither Plaintiffs nor any court made efforts to consolidate the two cases, or transition from old to new cases.

What is also clear—besides the controlling text—is that Congress overtly contemplated the role of "other class actions."  *Compare* 28 U.S.C. § 1332(d)(3)(F) (interests-of-justice exception) *with* 28 U.S.C. § 1332(d)(4)(A)(ii) (local-controversy exception).  In particular, Congress requires courts only to *consider* other relevant class actions, when deciding if they should decline jurisdiction under the discretionary interests-of-justice exception.  *Id.* § 1332(d)(3).  In contrast, within the local-controversy exception, Congress expressly *requires* that "no other class action" was "filed."  In short, Congressional purpose—from the text and from the statutory structure—is clear.

Because of the prior filing of the other putative class action, CAFA's local-controversy exception does not apply.

## CONCLUSION

None of Plaintiffs' proffered exceptions applies.  Thus, and for the reasons discussed above, Plaintiffs' motion to remand (Dkt. 18) is DENIED.

**SO ORDERED.**

Dated:          February 12, 2024
                Buffalo, New York


JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE